# Richmond.

## JOHN THACKER *v.* COMMONWEALTH.

November 16, 1922.

1. ATTEMPT TO COMMIT CRIME—*Elements of Attempt to Commit Crime.*—An attempt to commit a crime is composed of two elements: (1) The intent to commit it; and (2) a direct, ineffectual act done towards its commission. The act must reach far enough towards the accomplishment of the desired result to amount to the commencement of the consummation.

2. CRIMINAL LAW—*Intent—Attempts—Presumption of Criminal Intent— Proof of Criminal Intent.*—The law can presume the intention to commit a certain crime so far as such intention is realized in an act, but not an intention beyond what was so realized. The law does not presume, because an assault was made with a weapon likely to produce death, that it was an assault with the intent to murder. And where it takes a particular intent to constitute a crime, that particular intent must be proved either by direct or circumstantial evidence, which would warrant the inference of the intent with which the act was done.

3. CRIMINAL LAW—*Criminal Intent—Proof of Criminal Intent.*—When a statute makes an offense to consist of an act combined with a particular intent, that intent is just as necessary to be proved as the act itself, and must be found as a matter of fact before a conviction can be had; and no intent in law or mere legal presumption, differing from the intent in fact, can be allowed to supply the place of the latter.

4. ATTEMPT TO COMMIT CRIME—*Specific Intent—General Malevolence.*—To constitute an attempt to commit a crime, an act must be done with the specific intent to commit that particular crime. This specific intent at the time the act is done is essential. To do an act from general malevolence is not an attempt to commit a crime, because there is no specific intent, though the act according to its consequences may amount to a substantive crime. To do an act with intent to commit one crime cannot be an attempt to commit another crime, though it might result in such other crime.

5. HOMICIDE—*Attempt to Commit Murder—Intent—Case at Bar.*—In the instant case accused was convicted of an attempt to murder one R. It appeared that accused while intoxicated fired at a lighted lamp.

in a tent where R. was lying on a bed, and the shot passed through the head of this bed.  Accused did not know R., and testified that he had no intent to harm R. or anyone else, and that he would not have shot had he been sober.  There was other evidence corroborating the testimony of accused.

*Held:*  That the evidence fell short of proving the shot was fired with intent to murder R.

Error to a judgment of the Circuit Court of Alleghany county.

*Reversed.*

The opinion states the case.

*George A. Revercomb, W. Chapman Revercomb,* and *R. C. Stokes,* for the plaintiff in error.

*John R. Saunders, Attorney-General, J. D. Hank, Jr., Assistant Attorney-General,* and *Leon M. Bazile, Second Assistant Attorney-General,* for the Commonwealth.

WEST, J., delivered the opinion of the court.

This writ of error is to a judgment upon the verdict of a jury finding John Thacker, the accused, guilty of attempting to murder Mrs. J. A. Ratrie, and fixing his punishment at two years in the penitentiary.

The only assignment of error is the refusal of the trial court to set aside the verdict as contrary to the law and the evidence.

The accused, in company with two other young men, Doc Campbell and Paul Kelly, was attending a church festival in Alleghany county, at which all three became intoxicated.  They left the church between ten and eleven o'clock at night, and walked down the county road about one and one-half miles, when they came to a sharp curve.  Located in this curve was a tent in which the said Mrs. J. A. Ratrie, her husband, four children

·and a servant were camping for the summer.   The husband, though absent, was expected home that night, and Mrs. Ratrie, upon retiring, had placed a lighted lamp on a trunk by the head of her bed.   After eleven o'clock she was awakened by the shots of a pistol and loud talking in the road near by, and heard a man say, "I am going to shoot that God-damned light out;" and another voice said, "Don't shoot the light out."   The accused and his friends then appeared at the back of the tent, where the flaps of the tent were open, and said they were from Bath county and had lost their way, and asked Mrs. Ratrie if she could take care of them all night.   She informed them she was camping for the summer and had no room for them.   One of the three thanked her, and they turned away, but after passing around the tent the accused used some vulgar language and did some cursing and singing.   When they got back in the road, the accused said again he was going to shoot the light out, and fired three shots, two of which went through the tent, one passing through the head of the bed in which Mrs. Ratrie was lying, just missing her head and the head of her baby, who was sleeping with her.   The accused did not know Mrs. Ratrie and had never seen her before.   He testified he did not know any of the parties in the tent and had no ill will against either of them; that he simply shot at the light, without any intent to harm Mrs. Ratrie or anyone else; that he would not have shot had he been sober, and regretted his action.

The foregoing are the admitted facts in the case.

[1] An attempt to commit a crime is composed of two elements:   (1) The intent to commit it; and (2) a direct, ineffectual act done towards its commission.   The act must reach far enough towards the accomplishment of the desired result to amount to the commencement

of the consummation.    *Hicks* v. *Com.*, 86 Va. 226, 9 S. E. 1024, 19 Am. St. Rep. 891; *Uhl's Case*, 6 Gratt. (47 Va.) 706.

[2] The law can presume the intention so far as realized in the act, but not an intention beyond what was so realized.    The law does not presume, because an assault was made with a weapon likely to produce death, that it was an assault with the intent to murder.    And where it takes a particular intent to constitute a crime, that particular intent must be proved either by direct or circumstantial evidence, which would warrant the inference of the intent with which the act was done.

[3] When a statute makes an offense to consist of an act combined with a particular intent, that intent is just as necessary to be proved as the act itself, and must be found as a matter of fact before a conviction can be had; and no intent in law or mere legal presumption, differing from the intent in fact, can be allowed to supply the place of the latter.    *Roberts* v. *People*, 19 Mich. 401; *Maher* v. *People*, 10 Mich. 212, 81 Am. Dec. 781; 1 Whart. Crim. Law, sec. 316; *Vandermark* v. *State*, 47 Ill. 122; *Callahan* v. *State*, 21 Ohio St. 306; *Kunkle* v. *State*, 32 Ind. 320; *State* v. *Meadows*, 18 W. Va. 658; 3 Bish. New Crim. Proced., p. 1290; *Kinnebrew* v. *State*, 80 Ga. 232, 5 S. E. 56; *Lacefield* v. *State*, 34 Ark. 275, 36 Am. Rep. 8.

[4] In discussing the law of attempts, Mr. Clark, in his work on criminal law, says, at p. 111: "The act must be done with the specific intent to commit a particular crime.    This specific intent at the time the act is done is essential.    To do an act from general malevolence is not an attempt to commit a crime, because there is no specific intent, though the act according to its consequences may amount to a substantive crime.    To do an act with intent to commit one crime cannot be an

attempt to commit another crime though it might result in such other crime. To set fire to a house and burn a human being who is in it, but not to the offender's knowledge, would be murder, though the intent was to burn the house only; but to attempt to set fire to the house under such circumstances would be an attempt to commit arson only and not an attempt to murder. A man actuated by general malevolence may commit murder though there is no actual intention to kill; to be guilty of an attempt to murder there must be a specific intent to kill."

Mr. Bishop, in his Criminal Law, Vol. 1 (8th ed.), at section 729, says: "When the law makes an act, whether more or less evil in itself, punishable, though done simply from general malevolence, if one takes what, were all accomplished, would be a step towards it, yet if he does not mean to do the whole, no court can justly hold him answerable for more than he does. And when the thing done does not constitute a substantive crime, there is no ground for treating it as an attempt. So that necessarily an act prompted by general malevolence, or by a specific design to do something else, is not an attempt to commit a crime not intended.   *   * When we say that a man attempted to do a given wrong, we mean that he intended to do, specifically, it; and proceeded a certain way in the doing. The intent in the mind covers the thing in full; the act covers it only in part. Thus (section 730) to commit murder, one need not intend to take life, but to be guilty of an attempt to murder, he must so intend. It is not sufficient that his act, had it proved fatal, would have been murder (section 736). We have seen that the unintended taking of life may be murder, yet there can be no attempt to murder without the specific intent to commit it—a rule the latter branch whereof appears probably in a few

of the States to have been interfered with by statutes (citing Texas cases). For example, if one from a house-top recklessly throws down a billet of wood upon the sidewalk where persons are constantly passing, and it falls upon a person passing by and kills him, this would be the common law murder, but if, instead of killing, it inflicts only a slight injury, the party could not be convicted of an assault with attempt to commit murder, since, in fact, the murder was not intended."

[5] The application of the foregoing principles to the facts of the instant case shows clearly, as we think, that the judgment complained of is erroneous. While it might possibly be said that the firing of the shot into the head of Mrs. Ratrie's bed was an act done towards the commission of the offense charged, the evidence falls far short of proving that it was fired with the intent to murder her.

However averse we may be to disturb the verdict of the jury, our obligation to the law compels us to do so.

The judgment complained of will be reversed, the verdict of the jury set aside, and the case remanded for a new trial therein, if the Commonwealth shall be so advised.

*Reversed.*