# Wythebille

## LEWIS MERRITT V. COMMONWEALTH OF VIRGINIA.

June 13, 1935.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and Eggleston, JJ.

654

The opinion states the case.

*J. Toomer Garrow*, for the plaintiff in error.

*Abram P. Staples, Attorney-General*, and *Edwin H. Gibson, Assistant Attorney-General*, for the Commonwealth.

HUDGINS, J., delivered the opinion of the court.

This writ of error brings under review proceedings of a trial in which the accused was convicted of attempted murder, and sentenced to eight years in the penitentiary. The first error assigned is to the action of the court in overruling the demurrer to the indictment. The indictment, with some parts deleted, reads thus:

"The grand jurors * * * present that, Lewis Merritt did, on the 25th day of March, 1934, * * * feloniously attempt to commit the crime of murder *by then and there* with a pistol, * * * charged and loaded * * * which * * * he, * * * then and there feloniously, wilfully and of his malice aforethought, did point at and towards one P. H. Trull, he, the said Lewis Merritt, at this time being close enough to the said P. H. Trull, to be within carrying distance of said pistol, and so the jurors of the Commonwealth of Virginia, upon their oaths do say that Lewis Merritt, then and there, *in the manner and form above set forth, did attempt to kill and murder* the said P. T. Trull, against the peace and dignity of the Commonwealth of Virginia." (Italics supplied.)

The demurrer interposed stated that the indictment "is not sufficient in law, in respect of the terms in which it purports to charge an attempt to commit murder."

While no grounds of objection were stated to the action of the court in overruling the demurrer, at every stage of the proceedings, including the motion to set aside the verdict, accused contended that the indictment did not allege facts which would justify a conviction of an attempt to murder P. H. Trull.

The record is not well prepared and the objections are meagerly stated. However, it does appear that the main question here presented was raised in the lower court. This is shown not only in the record itself but in an able written opinion filed by the learned trial judge.

■ ■ The court was clearly right in overruling the demurrer, as the indictment charged the accused with the commission of a crime by maliciously pointing a loaded gun at Trull, who was in shooting range. This act, with no specific evil intent, constitutes a misdemeanor and not a felony. The Commonwealth, by filing a bill of particulars, seems to have undertaken to elevate the crime charged in the indictment from a misdemeanor to a felony, in that it states that the accused shot the pistol at Trull, who was in carrying range, "with intent to attempt to commit murder," a rather peculiar wording of notice to the accused of a specific intent intended to be charged against him. The motion to reject the bill of particulars was overruled, to which ruling an exception was noted, though the grounds of objection were not stated. However, as the principal question presented is whether the indictment is sufficient to support the conviction of an attempt to commit murder, we will not further discuss the action of the court in overruling the motion to reject the bill of particulars.

This court has been liberal in sustaining indictments charging an attempt to commit a crime under section 4767 of the Code, as amended by Acts 1930, chapter 32, page 30, but in no case has a felony charge been sus-

tained on an indictment similar to the one now under consideration.

■ "An attempt to commit a crime is composed of two elements: (1) The intent to commit it; and (2) a direct, ineffectual act done towards its commission. The act must reach far enough towards the accomplishment of the desired result to amount to the commencement of the consummation." *Thacker* v. *Commonwealth,* 134 Va. 767, 114 S. E. 504, 505. See also, *Dixon* v. *Commonwealth,* 162 Va. 798, 173 S. E. 521, 523.

■ The indictment should charge both the intent and the overt act. Under the above statute, we have held that where the intent appeared as a part of the act alleged it need not be expressly stated. In *Cunningham's Case,* 88 Va. 37, 13 S. E. 309, and *Broaddus* v. *Commonwealth,* 126 Va. 733, 101 S. E. 321, 323, the charge was that the accused, with force and arms, violently and feloniously made an assault upon the prosecutrix, and "did attempt to ravish and carnally know" her "against her will and by force."

■ In each of these, and other cases, it was held that the specific intent to commit the crime charged was sufficiently alleged and might be inferred, either from the nature of the act alleged or from the use of the word "attempt" in the indictment, as "attempt" embraces the full meaning of "intent," the only distinction between an "intent" and an "attempt" as used was that the former implies purpose only, while the latter implies both purpose and the effort to carry that purpose into effect.

In the case at bar, the indictment alleged that the accused did "attempt to commit murder." This part of the indictment does not state against whom the attempt was directed. The indictment proceeds to tell how the Commonwealth claims the attempt to commit murder was accomplished, *i. e.,* "by then and there" feloniously and maliciously pointing a loaded pistol at Trull, who was in gun shot range. Even if the jury had believed that the accused pointed a loaded gun at Trull, they would not

have been justified in finding him guilty of an attempted murder, unless they believed that at the time he pointed the pistol he had formed the purpose, the intent, to murder, and the act was done in furtherance of that specific intent.

The indictment concludes by stating that the accused "then and there, in the manner and form above stated," *i. e.*, by pointing a loaded pistol, "did attempt to kill and murder." The conclusion is unescapable that the only crime charged in the indictment is an assault, with no specific intent to kill and murder alleged. If the facts alleged in the indictment constitute a misdemeanor, the crime cannot be elevated to a felony simply by being so called by the pleader. The acts here alleged constitute an assault at common law, and there has been no statutory change of the crime in this jurisdiction.

"In order to constitute an assault there must be an overt act or an attempt, or the unequivocal appearance of an attempt, with force and violence, to do physical injury to the person of another. * * * The instances usually given of such attempts or offers to do wrong to the person of another, are 'by the striking at him with or without a weapon, or presenting a gun at him within a distance which the gun will carry, or pointing a pitchfork at him standing within the reach of it.' The law regards these acts as breaches of the peace, because they directly invade that personal security which the law guarantees to every citizen. They do not excite an apprehension that his person may be attacked on a future occasion, and thus authorize a resort to cautionary remedies against it; but they are the beginnings of an attack, excite terror of immediate personal harm or disgrace, and justify a resort to actual violence to repel impending injury and insult." 2 R. C. L. 533.

Judge Moncure, in the *Hardy Case*, 17 Gratt. (58 Va.) 592, 600, quoted with approval from an old English case, thus: "An assault is any attempt or offer with force or violence to do a corporeal hurt to another, whether from

malice or wantonness, as by striking at him in a threatening or insulting manner, or with such other circumstances as denote at the time an intention, coupled with a present ability, of actual violence against his person, as by pointing a weapon at him when he is within reach of it."

If the Commonwealth desired to prosecute the accused for a higher degree of crime than an assault with a deadly weapon, the indictment should have clearly alleged the necessary elements which constituted the particular crime; that is, if the Commonwealth intended to prove that the act was done in furtherance of a specific purpose, the design to murder Trull, this intent should have been alleged in the indictment.

"An act may be evil in itself, or evil by reason of the intent prompting it, or being in itself evil may be rendered more so by the intent. In an attempt, the act may be either evil or indifferent in itself; but whether it is the one or the other, its special reprehensible quality, as an element in this form of indictable wrong is derived from the particular intent whence it proceeds." Bishop on Criminal Law (9th Ed.), volume 1, page 521.

In *Lee* v. *Commonwealth*, 144 Va. 594, 131 S. E. 212, 213, the accused was charged with an attempt to kill and murder Loving. The indictment alleged the specific intent to kill and murder and that the particular acts were done in the furtherance of that purpose; *i. e.*, that Lee, after being ordered from the premises of Loving, threatened to kill him. Lee then returned home, armed himself with a loaded gun, went back to Loving's home and crept around the corner of the house, "seeking the said C. Ryland Loving, him to kill and murder, by stealth, and further did attempt to shoot off and discharge the said shot gun in the attempt to commit the said offense."

The Commonwealth proved the facts alleged and that while Lee was lying in wait for his intended victim Loving jumped upon him, and in the struggle the gun was discharged. Loving testified that the acused "was trying to get the gun to me and I was trying to get it away."

It was held that it was not necessary for the Commonwealth to prove that the accused fired the gun intentionally in order to uphold the conviction. The facts in that case were amply sufficient to sustain the conclusion reached.

In *Fields* v. *Commonwealth*, 129 Va. 774, 106 S. E. 333, the indictment was similar in many respects to the one here in question. There it was alleged that the accused "did discharge and shoot off at and towards one David Tabb" a pistol, "she (the accused) being close enough to the said David Tabb to be within carrying distance of said pistol." One of the objections raised to the indictment was "that it does not allege that the intent existed to kill him." The court in discussing the question thus raised, said:

"It is the settled law of this State that an indictment for murder need not expressly allege the intent to kill, and that an indictment for murder at common law (which does not expressly charge the intent to kill) is valid and sufficient to support a verdict of murder in the first degree, if the evidence introduced on the trial is sufficient to establish that the murder was of that degree. *Livingston's Case*, 14 Gratt. (55 Va.) 592, 596; *Cluverius' Case*, 81 Va. 787. On the same principle we are of opinion that an indictment for an attempt to commit murder at common law is valid and sufficient to support a verdict, such as that rendered in the instant case, convicting the accused of an attempt to commit murder in the first degree, if the evidence was sufficient to prove the commission of that crime."

The fallacy in this statement is that while a person may be guilty of murder though there was no actual intent to kill, he cannot be guilty of an attempt to commit murder unless he has a specific intent to kill. See Clark's Criminal Law, pp. 111, 112. A common example illustrating this principle is: "If one from a housetop recklessly throw down a billet of wood upon the side-

walk where persons are constantly passing, and it fall upon a person passing by and kill him, this would be by the common law murder. But if, instead of killing, it inflicts only a slight injury, the party could not be convicted of an assault with intent to commit murder." *Moore* v. *State*, 18 Ala. 532.

"Where the substantive crime intended requires a specific intent, though this intent does not in the same sense as in the other case aggravate what is done, still it adds a culpability which mere general malevolence could not give. So that the indictable attempt exists only when the act, short of the substantive crime, proceeds from the specific intent to do the entire evil thing, thus imparting to so much as is done a special culpability. When we say that a man attempted to do a given wrong, we mean that he intended to do it specifically; and proceeded a certain way in the doing. The intent in the mind covers the thing in full; the act covers it only in part.

"* * * To commit murder, one need not intend to take life; but to be guilty of an attempt to murder, he must so intend. It is not sufficient that his act, had it proved fatal, would have been murder." Bishop On Criminal Law (9th Ed.), volume 1, pages 521, 522.

Prior to 1796 there were no different degrees of murder in this State. By the act of December 15th of that year murder was divided into two degrees, substantially as now found in Code, section 4393.

In *Thompson* v. *Commonwealth*, 20 Gratt. (61 Va.) 724, 730, this is said: "It is not necessary, in consequence of the statute defining the different degrees of murder, and subjecting them to different punishments, to alter the form of indictments for murder in any respect, nor to charge specially such facts as would show the offense to be murder in the first degree." See *Hurd* v. *Commonwealth*, 159 Va. 880, 165 S. E. 536.

The statute, section 4767, does not undertake to state what shall constitute an attempt to commit a crime.

It provides that every person who makes an attempt, and in such attempt does any act towards its commission, shall be punished. The common-law definition of attempt is not changed.

"The two elements—of an evil intent and a simultaneous resulting act constitute, in combination only, an indictable attempt—the same as in any other crime. This is not the only way to state the proposition. The authorities are in substantial agreement as to the essentials of the crime though they differ in their forms of expression. It has therefore been stated that the following elements are involved in the crime: 1, The intent; 2, the performance of some act toward carrying it out; 3, failure to consummate. An actual crime must be in contemplation." Bishop On Criminal Law (9th Ed.), volume 1, page 519.

"The object of the indictment is: First, to furnish the accused with such a description of the charge against him as will enable him to make his defense, and avail himself of his conviction or acquittal for protection against a further prosecution for the same cause; and, second, to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had. For this, facts are to be stated, not conclusions of law alone. A crime is made up of acts and intent; and these must be set forth in the indictment, with reasonable particularity of time, place and circumstances." *U. S.* v. *Cruikshank,* 92 U. S. 542, 558, 23 L. Ed. 588.

The intent is the purpose formed in a man's mind, and is usually proved by his conduct, sometimes by his statements; the necessary intent constituting one element in an attempt is the intent in fact, as distinguished from an intent in law. From the act alleged, the law infers a general evil intent, on the principle that a man intends the probable and necessary consequences of his act. The act charged here is an assault. In order to raise this assault to a more substantive crime, it must

be done with a specific intent to take life. This intent cannot be inferred from the act alleged.

Bishop expresses the idea thus: " * * * we cannot first draw an evil intent from an act, and then enhance the evil of the act by adding this intent back again to it. There are a few cases which seem to overlook this truth, and even possibly to deny it; but it is sustained by very nearly the entire mass of judicial authority, English and American." Bishop On Criminal Law (9th Ed.), volume 1, page 525.

It seems that Judge Sims in using the language quoted above from the *Field's Case*, overlooked this truth pointed out by Mr. Bishop; hence we are of opinion that the reasons given for the conclusion reached on the point are unsound, and should not be extended.

The indictment in question did not allege that the assault was committed upon Trull with the specific intent to kill and murder him. We cannot infer the specific intent to kill and murder from the allegation that the accused maliciously pointed the loaded pistol at Trull. From this allegation, a general evil purpose may be inferred, but not the specific design to kill.

For the reasons stated, the judgment of the trial court is reversed, the verdict of the jury set aside, and the case remanded for such further proceedings as the Commonwealth may be advised.

*Reversed and remanded.*