COURT OF APPEALS OF VIRGINIA

Present:   Judges Benton, Humphreys and Senior Judge Hodges
Argued by teleconference


DAREN GUY PECK, S/K/A
 DARREN GUY PECK
                                          MEMORANDUM OPINION[*] BY
v.        Record No. 1972-02-1            JUDGE ROBERT HUMPHREYS
                                              NOVEMBER 12, 2003
COMMONWEALTH OF VIRGINIA



FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
D. Arthur Kelsey, Judge

Timothy E. Miller, Public Defender (Office of the Public
Defender, on brief), for appellant.

Jennifer R. Franklin, Assistant Attorney General
(Jerry W. Kilgore, Attorney General, on brief), for
appellee.


Darren Guy Peck appeals his conviction, after a bench trial, for attempted malicious

wounding.  Peck contends the trial court erred in finding the evidence sufficient to support his

conviction.  For the reasons that follow, we affirm the judgment of the trial court.

When examining a defendant's challenge to the sufficiency of the evidence on appeal,

"we must view the evidence and all reasonable inferences fairly deducible therefrom in the light

most favorable to the Commonwealth."  Ward v. Commonwealth, 264 Va. 648, 654, 570 S.E.2d

827, 831 (2002).  This principle requires us to "'discard the evidence of the accused'" which

conflicts, either directly or inferentially, with the Commonwealth's evidence.  Wactor v.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.  Further, because this opinion has no precedential value, we recite only those facts essential to our holding.

Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002) (quoting Watkins v. Commonwealth, 26 Va. App. 335, 348, 494 S.E.2d 859, 866 (1998)).  We will affirm the trial court's judgment "unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it."  Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).

> "'An attempt to commit a crime is composed of two elements: (1) The intent to commit it; and (2) a direct, ineffectual act done towards its commission.'"  Haywood v. Commonwealth, 20 Va. App. 562, 565, 458 S.E.2d 606, 607-08 (1995) (quoting Merritt v. Commonwealth, 164 Va. 653, 657, 180 S.E. 395, 397 (1935)).  In order to convict an accused of attempted malicious wounding, the Commonwealth must prove that the accused: (1) intended to "maliciously shoot, stab, cut or wound any person or by any means cause bodily injury with the intent to maim, disfigure, disable or kill"; and (2) committed a direct but ineffectual act toward this purpose.  See Code § 18.2-51.

Crawley v. Commonwealth, 25 Va. App. 768, 772, 492 S.E.2d 503, 505 (1997).  Peck argues the Commonwealth failed to produce sufficient evidence to prove the requisite intent and overt act.  We disagree.

"Intent is the purpose formed in a person's mind and may be, and frequently is, shown by circumstances."  Barrett v. Commonwealth, 210 Va. 153, 156, 169 S.E.2d 449, 451 (1969).  "[A] person is presumed to intend the immediate, direct, and necessary consequences of his voluntary act."  Nobles v. Commonwealth, 218 Va. 548, 551, 238 S.E.2d 808, 810 (1977).

> "'Malice inheres in the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will.'"  Long v. Commonwealth, 8 Va. App. 194, 198, 379 S.E.2d 473, 475 (1989) (citation omitted).  "Malice is evidenced either when the accused acted with a sedate, deliberate mind, and formed design, or committed any purposeful and cruel act without any or without great provocation."  Branch v. Commonwealth, 14 Va. App. 836, 841, 419 S.E.2d 422, 426 (1992) (citation omitted).  Volitional acts, purposefully or willfully committed, are consistent with a finding of malice and inconsistent with inadvertence.  See Porter v. Commonwealth, 17 Va. App. 58, 61, 435 S.E.2d 148, 149 (1993).

The presence of malice is a question of fact to be determined by the fact finder. See Long, 8 Va. App. at 198, 379 S.E.2d at 476.

Luck v. Commonwealth, 32 Va. App. 827, 833, 531 S.E.2d 41, 44 (2000). "In Virginia malice may be inferred from the deliberate use of a deadly weapon in the absence of proof to the contrary." Pannill v. Commonwealth, 185 Va. 244, 253, 38 S.E.2d 457, 462 (1946). "'A deadly weapon is one which is likely to produce death or great bodily injury from the manner in which it is used, and whether a weapon is to be regarded as deadly often depends more on the manner in which it has been used than on its intrinsic character.'" Id. at 254, 38 S.E.2d at 462 (quoting 40 C.J.S., Homicide, sec. 25).

Evidence adduced at trial proved that on February 12, 2002, Peck engaged in an altercation with a fellow employee, Jeffrey A. Crawford, while on a job-site. During the altercation, Peck began "cursing and swearing" at Crawford, then "lunged off" of the ladder he was standing on toward Crawford. When Peck lunged off of the ladder, he was holding a "six-inch dry wall knife" in his hand, a tool which Peck agreed "would cause a cut." Peck lunged toward Crawford, swinging the knife at him. Peck "put [the knife] very close to [Crawford] and threatened to cut [his] throat." Specifically, Peck made a "back and forth motion and then a jabbing forward motion" with the knife, bringing it within "five or six inches" of Crawford's neck area. Peck then stopped, still holding the "knife right there in [Crawford's] face." A few seconds later, Crawford stepped backward and grabbed another dry wall knife "in self-defense." At that time, "they both kind of separated" and Peck's supervisor, Rob LeBlond, "got [his] arm" in the "middle" of the two men to "get it split up."

Based on this evidence, we find that the trial court was not plainly wrong in inferring from all the facts and circumstances that Peck acted with deliberation and purpose, and intended to maim or disfigure Crawford by lunging toward him while swinging a dry wall knife near his

throat area. Nor did the trial court err in deciding that Peck intended the natural and probable consequences of these actions.

Peck correctly argues that, in order to prove an attempt to commit an offense, the Commonwealth must also adduce evidence of a "direct but ineffectual act" taken toward the commission of that offense. See Crawley, 25 Va. App. at 772, 492 S.E.2d at 505.

> An overt act is required to prove an attempted offense because without it, there is too much uncertainty as to the accused's actual intent. However, if "the design of a person to commit a crime is clearly shown, slight acts done in furtherance of this design will constitute an attempt."

Tharrington v. Commonwealth, 2 Va. App. 491, 494, 346 S.E.2d 337, 339 (1986) (quoting State v. Bell, 316 S.E.2d 611, 616 (N. C. 1984)) (other citations omitted).

In the case at bar, the evidence produced by the Commonwealth was clearly sufficient to establish a basis from which the trial court could infer that Peck's conduct demonstrated his intent to wound Crawford and that his conduct went beyond mere preparation to carry out his intention. The mere fact that Peck stopped short of cutting Crawford does not negate the significance of the evidence of his intent, nor his conduct in furtherance of the crime. Indeed, Crawford testified that it was not until he picked up another knife, "in self-defense," and LeBlond intervened, that the altercation came to an end. See Bottoms v. Commonwealth, 22 Va. App. 378, 383, 470 S.E.2d 153, 156 (1996) ("Although an overt act must go beyond mere preparation, 'it need not be the last proximate act to the consummation of the crime in contemplation, but it is sufficient if it be an act apparently adapted to produce the result intended.'" (quoting Granberry v. Commonwealth, 184 Va. 674, 678, 36 S.E.2d 547, 548 (1946))).

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

Benton, J., dissenting.

"'An attempt to commit a crime is composed of two elements: (1) The intent to commit it; and (2) a direct, ineffectual act done towards its commission.'" Haywood v. Commonwealth, 20 Va. App. 562, 565, 458 S.E.2d 606, 607-08 (1995) (quoting Merritt v. Commonwealth, 164 Va. 653, 657, 180 S.E. 395, 397 (1935)). Thus, "to convict an accused of attempted malicious wounding, the Commonwealth must prove that the accused (1) intended to 'maliciously shoot, stab, cut or wound any person or by any means cause bodily injury with the intent to maim, disfigure, disable or kill' [Code § 18.2-51]; and (2) committed a direct but ineffectual act toward this purpose." Crawley v. Commonwealth, 25 Va. App. 768, 772, 492 S.E.2d 503, 505 (1997).

In discussing the law of attempts, the Supreme Court has noted the following:

> "The act must be done with the specific intent to commit a particular crime. This specific intent at the time the act is done is essential. To do an act from general malevolence is not an attempt to commit a crime, because there is no specific intent, though the act according to its consequences may amount to a substantive crime. To do an act with intent to commit one crime cannot be an attempt to commit another crime though it might result in such other crime. To set fire to a house and burn a human being who is in it, but not to the offender's knowledge, would be murder, though the intent was to burn the house only; but to attempt to set fire to the house under such circumstances would be an attempt to commit arson only and not an attempt to murder. A man actuated by general malevolence may commit murder though there is no actual intention to kill; to be guilty of an attempt to murder there must be a specific intent to kill."

Thacker v. Commonwealth, 134 Va. 767, 770-71, 114 S.E. 504, 506 (1922) (citation omitted).

"It is the law in this jurisdiction that where a statute makes an offense consist of an act combined with a particular *intent*, such *intent* is as necessary to be proved as the act itself, and it is necessary for the intent to be established as a matter of fact before a conviction can be had." Dixon v. Commonwealth, 197 Va. 380, 382, 89 S.E.2d 344, 345 (1955). Indeed, to support a conviction in this case, the evidence must prove specific intent beyond a reasonable doubt. In re

Winship, 397 U.S. 358, 364 (1970). "Surmise and speculation as to the existence of the intent are not sufficient, and 'no intent in law or mere legal presumption, differing from the intent in fact, can be allowed to supply the place of the [requisite specific intent].'" Dixon, 197 Va. at 382, 89 S.E.2d at 345 (citation omitted); McKeon v. Commonwealth, 211 Va. 24, 26, 175 S.E.2d 282, 284 (1970).

The evidence is undisputed that during a labor dispute Daren Guy Peck and Jeffrey Crawford argued about the timeliness and quality of Peck's work on the walls of a new house. The owner of the construction company described the relevant events as follows:

> Q: And what happened then.
>
> A: You know, I could see that they -- you know, we weren't getting a whole lot with all the arguing, so [Crawford], who heads up the service department, asked [Peck] to leave. At that point [Peck] came off the ladder and approached [Crawford] with the dry wall knife.
>
> Q: Do you recall him saying anything when he came off the ladder?
>
> A: . . . I think [Crawford] put it as, well, maybe you ought to just leave then. And [Peck] came off the ladder and said, "Well, maybe I just ought to come down here and cut your throat." And at that point he approached [Crawford], came at him pretty hard, and had the -- you know, was waving the knife in front of him at that point.
>
> Q: Show the Court how he was holding the knife.
>
> A: He just came off the ladder like he was coming straight at him.
>
> Q: You're indicating your arm straight ahead?
>
> A: Yes, ma'am.
>
> Q: And what was he doing with the knife?
>
> A: Just he was -- kind of movement like this.
>
> Q: You're indicating a forward and back motion?
>
> A: Uh-huh.

Q:  Did you see where the -- you know, what was in his hand, exactly?

A:  It was either a five or six-inch, we call them dry wall knives. They're putty knives, whatever.  They're used for touching up walls and doing dry wall, plaster-type work.

Q:  And did you see where the putty knife or dry wall knife was actually in relationship to . . . Crawford?

A:  Yeah.  Before I got involved they were getting pretty close to each other.  They were kind of about face to face. . . .  [It] was up towards his neck, about six inches to a foot away, I'd say, roughly.

Q:  What did . . . Crawford do?

A:  At that point, [Crawford] stepped backwards and there was a center island in the kitchen and we were all working on the house and there happened to be a couple of tools on the kitchen island. [Crawford] grabbed one of those and then it was just kind of a standoff and that's when I was able to kind of split things up and ask [Peck] to leave.

Q:  What do you mean, you split things up?  What specifically did you do?

A:  Well, at first I was in the situation where I didn't really want to get between [Peck] and the knife and so [Crawford] stepped back. He grabbed a tool, they both kind of separated and then I had to kind of jump in the middle and get it split up at that point.

*     *     *     *     *     *     *

Q:  You said at some point they were face to face.  How close were they when you say they were face to face?

A:  The closest it got was when [Peck] came right up to him, then stopped, with the knife.  I'd say six inches to a foot apart at that point.

Q:  When you say that [Peck] came right up to him and stopped with the knife, he went like that and then stopped?

A:  Yes, sir.

Q:  How long were they in that position before [Crawford] went back and grabbed the little putty knife?

A: It might have been maybe ten or fifteen seconds, because they just, kind of a standoff, then [Crawford] had the other knife and they'd -- okay.

Q: But during that ten or five seconds would you say it was jawing off, would you say --

A: I don't think they were saying a whole lot at that stage of the game.

Q: And in that ten or fifteen seconds [Peck] didn't take any swipes at him?

A: No, he just sat there with that knife right there in his face though.

This evidence proved Peck, himself, stopped his advance toward Crawford and, while cursing, stood before Crawford with his putty knife. He made no attempt to act beyond that threat. No evidence proved "an extraneous circumstance independent of the will of [Peck] . . . prevented [him] from carrying out" his threat. Howard v. Commonwealth, 207 Va. 222, 228, 148 S.E.2d 800, 804 (1966). The two men were looking at each other in a "standoff" before Crawford stepped to the table and retrieved his putty knife. No evidence proved Peck moved toward Crawford when he stepped to the table to get his putty knife. Indeed, when the owner stepped between them, Peck was not advancing toward Crawford. Peck left the house at the owner's suggestion without further ado.

I would hold that Peck's volitional act of stopping within six to twelve inches of Crawford without any further movement toward Crawford negates the alleged intent to maliciously wound Crawford. The inference of an intent to wound is negated by the evidence that Peck ceased his approach to Crawford and remained in a "stand off" with Crawford for ten to fifteen seconds without initiating any further contact and without the intervention of some outside force.

Although the evidence does not support a finding of attempt to maliciously wound, Peck was not blameless. Rather, the evidence shows that Peck's actions constituted an assault against

Crawford because his comments and lunge toward Crawford with a putty knife placed Crawford in reasonable apprehension of bodily harm. In Virginia, a criminal assault has long been defined as either (1) an attempt to touch another person in an unprivileged way, see Harper v. Commonwealth, 196 Va. 723, 725-26, 85 S.E.2d 249, 251 (1955), or (2) an intentional placing of another in apprehension of receiving an immediate unprivileged touching, see Burgess v. Commonwealth, 136 Va. 697, 707-08, 118 S.E. 273, 276 (1923). "[B]oth will involve some physical act which proffers imminent unwanted force." John L. Costello, Virginia Criminal Law and Procedure § 4.2, at 70-71 (2d ed. 1995) (emphasis omitted). Indeed, the Supreme Court recently reaffirmed that Virginia

> adhere[s] to the common law definition of assault, . . . [requiring] an attempt with force and violence, to do some bodily hurt to another, whether from wantonness or malice, by means calculated to produce the end if carried into execution; it is any act accompanied with circumstances denoting an intention, coupled with a present ability, to use actual violence against another person.

Zimmerman v. Commonwealth, 266 Va. 384, 387, 585 S.E.2d 538, 539 (2003). Peck's lunge toward Crawford with the putty knife followed by a "stand off" before Crawford, was sufficient to show Peck intended to put Crawford in fear of bodily harm with the threat to use the putty knife. That conduct is by definition an assault. See id.

For these reasons, I would reverse the conviction for attempted malicious wounding and remand for proceedings on an offense no greater than assault.