COURT OF APPEALS OF VIRGINIA

Present:  Judges Beales, Huff and O'Brien
Argued by videoconference

**PUBLISHED**

RUEBIN CLIFTON FLETCHER

OPINION BY
v.      Record No. 1736-19-2      JUDGE MARY GRACE O'BRIEN
NOVEMBER 10, 2020

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
Joseph J. Ellis, Judge

Kevin E. Calhoun (Charles C. Cosby, Jr.; The Law Office of Charles
C. Cosby, Jr., P.C., on brief), for appellant.

Sharon M. Carr, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Following a bench trial, Ruebin Clifton Fletcher ("appellant") was convicted of carjacking,

in violation of Code § 18.2-58.1; attempted malicious wounding, in violation of Code §§ 18.2-26

and 18.2-51; abduction, in violation of Code § 18.2-47; felony destruction of property, in violation

of Code § 18.2-137; and assault, in violation of Code § 18.2-57.  The court granted appellant's

motion to strike a charge of attempted rape, in violation of Code §§ 18.2-26 and 18.2-61.

The court imposed a total sentence of forty-five years and eleven months of incarceration,

with thirty years suspended.  The court's sentence included twenty years of incarceration, with

fourteen years suspended, on the abduction conviction.

Appellant challenges the sufficiency of the evidence to support his carjacking and attempted

malicious wounding convictions.  He also asserts that the court erred in sentencing him in excess of

the statutory maximum on the abduction conviction.

BACKGROUND

At approximately midnight on July 17, 2018, the victim, who was driving home after visiting a friend, stopped to inflate her tires at a gas station. Appellant, who was driving a white sedan, stopped nearby, rolled down his window, and offered to help. The victim declined. Appellant then parked and approached her on foot. He reiterated his offer to help, told her his name, and asked for her name. Because she was uncomfortable, the victim gave a false name. Appellant invited the victim to "hang out" and "smoke some weed," but she declined.

Appellant continued attempting to engage the victim in conversation and repeatedly asked if she wanted to "hang out." The victim ignored him, finished inflating her tires, and left the gas station parking lot. Appellant drove out "right behind" her and began following her. Concerned, the victim texted her friend and turned onto a rural two-lane road which she thought was "more of a highway." Appellant followed and began to drive closer to the victim's car.

The victim called 911 and reported that she was being followed. Meanwhile, appellant pulled up close behind her car, crossed into the oncoming traffic lane, and accelerated past her. Appellant returned to the victim's lane and "slammed on his brakes," forcing the victim to stop abruptly. The 911 dispatcher told the victim to turn around. However, while attempting to do so, the victim backed her car into a ditch; the front of her car remained on the road, obstructing a traffic lane. Appellant backed up his car until it was perpendicular to the victim's vehicle, forming a "T" shape and blocking the victim's vehicle so that she could not drive forward, even if she exited the ditch.

Appellant got out of his car, wearing gloves and carrying a long metal object that witnesses described as a "tire iron." He approached the victim's driver's side window and demanded that she get out and follow him. The victim refused. Appellant responded by trying to smash the window with the tire iron. He hit the window three times, leaving scratches, but the window did not break.

At that time, the victim saw another car approach in the lane blocked by her car. Appellant returned to his car to move it out of the way, still yelling at the victim to follow him. The victim then flashed her lights and rolled her window down, calling for help. The approaching car pulled over, and two men got out and ran toward the victim's car. According to one of the men, the victim's car was angled "almost like in a T-bone[.] . . . [Y]ou could tell that [it] couldn't really move until [appellant's] car moved."

Appellant parked near the victim's car and got back out, still wearing gloves and carrying the tire iron. As the two men approached, he retreated to his car, where he remained for a minute with his high beams on before driving away. He returned a short time later and stayed for "maybe thirty seconds" before leaving again. The 911 dispatcher recorded the entire incident.

Two sheriff's deputies responded to the scene. One deputy obtained a DMV photograph of appellant based on his car's license plate number and showed it to the victim. The victim identified appellant from the photo.

A third officer who was driving nearby heard the dispatcher's description of appellant's vehicle, and he saw a white car speed past him. He pursued the car for a short distance but was unable to catch up; he estimated it was traveling between 100 and 120 miles per hour. He subsequently identified the white car as appellant's vehicle from a photograph taken from surveillance footage at the gas station.

Appellant was arrested on July 26, 2018. The tire iron was never recovered.

ANALYSIS

In his first two assignments of error, appellant contests the sufficiency of the evidence to support his convictions for carjacking and attempted malicious wounding. First, he contends that the Commonwealth failed to prove that he seized or seized control of the victim's vehicle, which is an element of carjacking under Code § 18.2-58.1. Second, he argues that the Commonwealth failed

- 3 -

to prove that he had a specific intent to maliciously wound the victim, as required by Code § 18.2-51.

When considering a challenge to the sufficiency of the evidence supporting a conviction, an appellate court reviews the facts "in the light most favorable to the Commonwealth, the prevailing party at trial." Gerald v. Commonwealth, 295 Va. 469, 472 (2018) (quoting Scott v. Commonwealth, 292 Va. 380, 381 (2016)). In doing so, an appellate court "discard[s] the evidence of the accused in conflict with that of the Commonwealth, and regard[s] as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." Kelley v. Commonwealth, 289 Va. 463, 467-68 (2015) (quoting Parks v. Commonwealth, 221 Va. 492, 498 (1980)).

"The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it." Wood v. Commonwealth, 57 Va. App. 286, 292 (2010) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443 (1987)); see Code § 8.01-680. In reviewing the court's verdict, an appellate court "does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Secret v. Commonwealth, 296 Va. 204, 228 (2018) (quoting Pijor v. Commonwealth, 294 Va. 502, 512 (2017)). "Rather, the relevant question is, upon review of the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (quoting Pijor, 294 Va. at 512). Further, "[t]he credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters solely for the fact finder's determination." Crawley v. Commonwealth, 29 Va. App. 372, 375 (1999).

Issues of statutory construction are questions of law which are reviewed *de novo*. Hilton v. Commonwealth, 293 Va. 293, 299 (2017).

A.  Carjacking

Appellant was convicted of carjacking in violation of Code § 18.2-58.1, which provides, in

pertinent part, as follows:

> As used in this section, "carjacking" means *the intentional seizure or seizure of control* of a motor vehicle of another with intent to permanently or temporarily deprive another in possession or control of the vehicle of that possession or control by means of partial strangulation, or suffocation, or by striking or beating, or by other violence to the person, or by assault or otherwise putting a person in fear of serious bodily harm, or by the threat or presenting of firearms, or other deadly weapon or instrumentality whatsoever.

(Emphasis added).

Thus, the Commonwealth may prove a violation of the carjacking statute in one of two

ways:  either by establishing that the defendant "seiz[ed]" the vehicle or by proving that the

defendant "seiz[ed] . . . control" of the vehicle.  See id.; see also Hilton, 293 Va. at 299.  Appellant

argues that the Commonwealth failed to prove that he seized or seized control of the victim's car.[1]

In Hilton, the Supreme Court distinguished between "seizure" and "seizure of control" as

used in Code § 18.2-58.1.  See 293 Va. at 299.  There, the defendant robbed the victim at gunpoint

while both individuals were standing outside of the victim's pickup truck.  Id. at 297.  The

defendant took the victim's cash and keys and ordered the victim to get in the truck; the victim

complied.  Id.  As the defendant walked away with the cash and keys, the victim got out of the truck

with a shotgun and chased him.  Id.  The defendant was convicted of carjacking.  Id.

---

[1] Appellant does not challenge the trial court's finding that he acted with the requisite intent to "permanently or temporarily deprive another in possession or control of the vehicle of that possession or control" and that he did so "by means of partial strangulation, or suffocation, or by striking or beating, or by other violence to the person, or by assault or otherwise putting a person in fear of serious bodily harm, or by the threat or presenting of firearms, or other deadly weapon or instrumentality whatsoever."

In affirming his conviction, the Supreme Court defined "seizure" under the carjacking statute as "taking possession of [the victim's vehicle], as occurs, for example, where the perpetrator actually enters the victim's vehicle and drives away." Id. at 299 (citing then quoting Seize, Black's Law Dictionary (10th ed. 2014) (defining "seize" as "[t]o forcibly take possession (of a person or property)")). In contrast, the Supreme Court defined "seizure of control" as merely "'exercis[ing] power' over [the victim's vehicle]." Id. (quoting Control, Black's Law Dictionary (10th ed. 2014) (defining "control" as "[t]o exercise power or influence over")).[2] Thus, by seizing "control" of a victim's vehicle, "a perpetrator can commit carjacking without actually seizing the victim's vehicle, i.e., taking possession of it[.]" Id. In fact, "the victim can be deprived of possession or control of his vehicle without the perpetrator actually entering the vehicle." Id. (citing People v. Gray, 78 Cal. Rptr. 2d 191, 196 (Ct. App. 1998) (holding that under California's carjacking statute, "the owner or possessor of a vehicle may be deprived of possession . . . when the victim remains in the car and the defendant exercises dominion and control over the car by force or fear")).

Based on these definitions of "seizure" and "seizure of control," the Supreme Court held that the defendant "seized control" of the victim's truck, and thus completed the crime of carjacking, when he took the victim's keys at gunpoint. Id. at 301. While the victim was initially in "possession or control" of his truck as he stood by the truck with the keys in his pocket, id. at 300 (quoting Code § 18.2-58.1), when the defendant "pull[ed] out a revolver, point[ed] it at the victim's chest at point-blank range, and threaten[ed] to shoot the victim[,] . . . the victim was not free to get back into his truck, much less drive it[,]" id. at 300-01.

---

[2] The Supreme Court explained that the term "control" is given its "ordinary and plain meaning, considering the context in which it is used." Hilton, 293 Va. at 299 (quoting Grimes v. Commonwealth, 288 Va. 314, 318 (2014)).

In sum, a carjacker "seizes" a vehicle pursuant to Code § 18.2-58.1 upon "taking possession" of the vehicle, which often occurs when the carjacker enters the victim's vehicle and drives away. See id. at 299. In contrast, a carjacker "seizes control" of a vehicle under the carjacking statute when the carjacker merely "exercise[s] power" or restraint over the victim's vehicle, such as by taking the victim's keys. See id. at 301.

Here, the court found that appellant "seized control" of the victim's vehicle. This holding is not plainly wrong or without evidence to support it. See Wood, 57 Va. App. at 292. After appellant slammed on his brakes while directly in front of the victim's car, the victim attempted to turn around and inadvertently backed her car into a ditch. Appellant moved his vehicle perpendicular to the front of her car, forming a "T" shape. The victim explained at trial that even if she could have extricated her car from the ditch, she would not have been able to drive forward because appellant had blocked her in. Her testimony was corroborated by the other witnesses, one of whom stated: "[Y]ou could tell that [the victim's car] couldn't really move until [appellant's] car moved." By blocking the victim's car, appellant exercised power and restraint over the movement of her car. See Hilton, 293 Va. at 300-01. Accordingly, we hold that a reasonable fact finder could conclude that appellant seized control of the victim's vehicle as required by the carjacking statute.

Appellant nevertheless argues that "the facts in Keyser [v. Commonwealth, 22 Va. App. 747 (1996),] . . . are more aggravating than the facts [here] and come much closer to proving a seizure or seizure of control over a vehicle for purposes of carjacking."

In Keyser, the victim, who was sitting in the driver's seat of her car with the motor running, reached to pull her door shut when the defendant "shoved" the door back and said, "I'm going to drive this car." 22 Va. App. at 748. The defendant then "pounced over [her] upper body," grabbed her arms, tried to push her into the passenger seat, and attempted to reach for the gearshift. Id. at 748-49. However, a large stack of newspapers was on the passenger seat, so "[t]here was no way

[the defendant] could take the car unless he got [the victim] out of there[.]" Id. at 749. The victim stabbed at the defendant with a pair of scissors, and the defendant fled. Id. The defendant was convicted of carjacking. Id. at 748. On appeal, this Court reversed, holding that the evidence "[supported] a conviction for attempted carjacking but not actual carjacking" because the defendant's ineffectual struggle with the victim and grab for the gearshift did not constitute "seiz[ing] the vehicle or seiz[ing] control of the vehicle[.]" Id. at 750.

Keyser is distinguishable. In Keyser the defendant physically struggled with the victim for control of the victim's car until the victim stabbed him and he fled. Id. at 748-49. The defendant at no point performed any action which effectively ended the struggle and gave him control over the car, such as taking away the victim's keys at gunpoint, see, e.g., Hilton, 293 Va. at 301, or absconding with the car by force, see, e.g., Spencer v. Commonwealth, 42 Va. App. 443, 450-52 (2004) (holding that a defendant seized a vehicle from a victim's "possession and control" by force when he rolled the vehicle into the victim while she was standing in front of the fender, bruising her leg and forcing her to move out of the way). Here, by contrast, appellant did not merely "struggle" with the victim for control of her car. Rather, appellant seized control over the victim's car by blocking it into a ditch, which effectively prevented the victim from driving away. Further, the victim made no ongoing attempt to retain or regain control over her vehicle.

Accordingly, we hold that the evidence was sufficient to sustain appellant's carjacking conviction.

### B. Attempted Malicious Wounding

Appellant was convicted of attempted malicious wounding, in violation of Code §§ 18.2-26 and 18.2-51. The malicious wounding statute states in relevant part that it is a crime to "maliciously shoot, stab, cut, or wound any person or by any means cause him bodily injury, with the intent to maim, disfigure, disable, or kill[.]" Code § 18.2-51. "An attempt to commit a crime is composed of

two elements: (1) The intent to commit it; and (2) a direct, ineffectual act done towards its commission." Haywood v. Commonwealth, 20 Va. App. 562, 565 (1995) (quoting Merritt v. Commonwealth, 164 Va. 653, 657 (1935)). Appellant contends that the evidence was insufficient to prove that he intended to maliciously wound the victim.

Determining intent is "generally a question for the trier of fact." Id. at 565-66 (quoting Nobles v. Commonwealth, 218 Va. 548, 551 (1977)). "The intent required to be proven in an attempted crime is the specific intent in the person's mind to commit the particular crime for which the attempt is charged." Wynn v. Commonwealth, 5 Va. App. 283, 292 (1987). "[T]he fact finder may infer that a person intends the immediate, direct, and necessary consequences of his voluntary acts." Moody v. Commonwealth, 28 Va. App. 702, 706-07 (1998).

Because intent is a "state of mind," it "may be proved by a person's conduct or by his statements." Barrett v. Commonwealth, 210 Va. 153, 156 (1969). To prove intent based on a person's conduct or statements, "[c]ircumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." Coleman v. Commonwealth, 226 Va. 31, 53 (1983). However, "circumstantial evidence is not to be viewed in isolation." Kelly v. Commonwealth, 41 Va. App. 250, 259 (2003) (*en banc*). "While no single piece of evidence may be sufficient, 'the combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.'" Id. (quoting Commonwealth v. Hudson, 265 Va. 505, 514 (2003)).

The "intent to commit malicious wounding" is the intent to "maliciously shoot, stab, cut or wound any person or by any means cause bodily injury with the intent to maim, disfigure, disable or kill[.]" Code § 18.2-51; see Crawley v. Commonwealth, 25 Va. App. 768, 772 (1997). The presence of malice "is a question of fact to be determined by [the trier of fact]." Long v.

Commonwealth, 8 Va. App. 194, 198 (1989) (alteration in original) (quoting Dawkins v.

Commonwealth, 186 Va. 55, 61 (1947)).  "Malice is evidenced either when the accused acted with a

sedate, deliberate mind, and formed design, or committed any purposeful and cruel act without any

or without great provocation."  Branch v. Commonwealth, 14 Va. App. 836, 841 (1992).  Malice

may be inferred from the "deliberate use of a deadly weapon unless, from all the evidence, [there is]

reasonable doubt as to whether malice existed."  Strickler v. Commonwealth, 241 Va. 482, 495

(1991).  The Supreme Court has described a "deadly weapon" as

> one which is likely to produce death or great bodily injury from the
> manner in which it is used[.] . . .  [W]hether a weapon is to be
> regarded as deadly often depends more on the manner in which it has
> been used than on its intrinsic character. . . .  Among other
> instruments which may under the circumstances of their use be
> regarded as deadly weapons [include] . . . metal bars and rods . . . .

Pannill v. Commonwealth, 185 Va. 244, 254 (1946).

Here, testimony established that appellant attempted to speak with the victim but was

rejected, followed closely behind her onto a rural road, and accelerated past her before slamming on

his brakes and forcing her to stop.  He blocked her car and approached wearing gloves and carrying

a tire iron.  He aggressively yelled at her to get out, and he repeatedly struck her window with the

tire iron, damaging the window.  From "the combined force of [these] concurrent and related

circumstances," a rational fact finder could infer that appellant acted with malicious intent.  See

Kelly, 41 Va. App. at 259; see also Branch, 14 Va. App. at 841.

Appellant argues that he did not specifically intend to harm the victim because he "swung

the tire iron with so little force that it did not break the victim's window and only left scratches on

the window."  However, the victim testified that appellant hit her driver's side window repeatedly

with so much force that she expected it to shatter.  Because a "fact finder may infer that a person

intends the immediate, direct, and necessary consequences of his voluntary acts[,]" Moody, 28

- 10 -

Va. App. at 706-07, the court reasonably concluded that appellant repeatedly hit the victim's car window with the intent to shatter the window and strike her with the tire iron.

Appellant also argues that the record contains no evidence that he used threatening language toward the victim, and he merely told her to "get out" of the car and "follow" him. However, lack of threatening statements alone does not necessarily negate malicious intent. See id. at 707 (holding that the defendant's gesture for the victim to move out of the way while the defendant drove directly at him "[did] not negate the trial court's reasonable inference that [the defendant] had formed the specific intent to run over [the victim] should the [victim] not move out of his way").

Lastly, appellant contends that the evidence was "suspect at best as to whether [he] even used a tire iron to hit the victim's window[,]" and therefore there is "considerably less evidence" to show that he acted with malicious intent. However, considering the evidence in the light most favorable to the Commonwealth, as the party that prevailed in the trial court, the record amply supports a finding that appellant used a tire iron to strike the victim's window. Both the victim and another witness referred to a "tire iron" on the 911 call, and one witness described seeing appellant trying to break the victim's window with "a metal object." Additionally, mere lack of a tire iron does not negate malicious intent. Regardless of whether appellant used an actual tire iron, he repeatedly swung a metal object similar to a tire iron at a window near the victim's head. The court could reasonably find that the appellant used that object as a deadly weapon, see Pannill, 185 Va. at 254, and thereby infer that he acted with malicious intent, see Branch, 14 Va. App. at 841.

In sum, appellant's unprovoked actions — following the victim down a rural road, tailgating her, blocking her car in a ditch, and using a tire iron to repeatedly strike the window next to her head — support the court's conclusion that he had the specific intent to maliciously wound her.

C. Abduction Sentence

Initially, appellant was indicted for the crime of abduction with intent to defile, in violation of Code § 18.2-48. Abduction with intent to defile is a Class 2 felony, punishable by "imprisonment for life or for any term not less than [twenty] years." Code §§ 18.2-48, 18.2-10(b). However, the court found appellant guilty of the reduced charge of abduction, in violation of Code § 18.2-47. That statute provides that "[a]bduction for which no punishment is otherwise prescribed shall be punished as a Class 5 felony." Code § 18.2-47(C). A Class 5 felony is punishable by a "term of imprisonment of not less than one year nor more than [ten] years, or in the discretion of the . . . court[,] . . . confinement in jail for not more than [twelve] months and a fine of not more than $2,500, either or both." Code § 18.2-10(e).

The court sentenced appellant to twenty years of imprisonment with fourteen years suspended on the abduction conviction. Appellant did not object to the sentence or file a motion to reconsider. For the first time on appeal, he contests that the court erred in imposing a sentence that exceeded the statutory maximum.

Ordinarily, "[t]he Court of Appeals will not consider an argument on appeal which was not presented to the trial court." Ohree v. Commonwealth, 26 Va. App. 299, 308 (1998). Rule 5A:18 mandates that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, *except* for good cause shown or to enable the Court of Appeals to attain the ends of justice." (Emphasis added).

"The ends of justice exception is narrow and is to be used sparingly[.]" Holt v. Commonwealth, 66 Va. App. 199, 209 (2016) (*en banc*) (quoting Redman v. Commonwealth, 25 Va. App. 215, 220-21 (1997)). In deciding whether the exception should apply, an appellate court must ask two questions: "(1) whether there is error as contended by the appellant; and (2) whether

- 12 -

the failure to apply the ends of justice provision would result in a grave injustice." <u>Gheorghiu v. Commonwealth</u>, 280 Va. 678, 689 (2010).

Appellant argues that this Court should apply the ends of justice exception to Rule 5A:18 and consider his argument that the court sentenced him to a term of incarceration for abduction that surpassed the mandatory statutory maximum. The Commonwealth agrees.

The court sentenced appellant to a term of incarceration of twenty years, with fourteen suspended, on his conviction of abduction, a Class 5 felony, which carries a mandatory maximum sentence of ten years of incarceration. <u>See</u> Code §§ 18.2-47(C), 18.2-10(e). "It has long been established, subject to limited statutory exception, that neither a judge nor a jury may fix a sentence *exceeding* the statutory range and that such a penalty is void as to the excess." <u>Commonwealth v. Greer</u>, 63 Va. App. 561, 573 (2014). Therefore, the court erred by imposing a prison sentence that exceeded the statutory maximum.

"[A] sentence imposed in violation of a prescribed statutory range of punishment is void *ab initio*[.]" <u>Rawls v. Commonwealth</u>, 278 Va. 213, 221 (2009). "Denying [a defendant] his liberty on the basis of a void sentence would impose a grave injustice upon him[.]" <u>Gordon v. Commonwealth</u>, 61 Va. App. 682, 685 (2013) (alteration in original) (quoting <u>Charles v. Commonwealth</u>, 270 Va. 14, 20 (2005), <u>abrogated on other grounds by</u> <u>Rawls</u>, 278 Va. at 221). For these reasons, appellant's sentence for abduction is void *ab initio*, and "application of the ends of justice exception is, therefore, fully justified" here. <u>Id.</u> (quoting <u>Charles</u>, 270 Va. at 20).

This Court has "no authority to strike the excessive portion of [a defendant's sentences] and impose the statutory maximum sentence for each conviction." <u>Id.</u> at 688. Rather, a defendant who appeals a void sentence for one of multiple convictions is entitled to a new sentencing hearing, but only for the void sentence. <u>See</u> <u>Rawls</u>, 278 Va. at 221 (declining to order new sentencing hearings for convictions that carried sentences within the statutorily prescribed ranges). "While, on remand,

the trial court is free to impose the maximum term of incarceration, it is not required to do so." Gordon, 61 Va. App. at 689. Appellant requests that this Court "remand the conviction for [a]bduction to the trial court for a new sentencing hearing." The Commonwealth concurs with appellant's request, and we likewise agree. Accordingly, we remand for a new sentencing hearing on that conviction.

CONCLUSION

For the reasons stated, we hold that the evidence was sufficient to establish the crimes of carjacking and attempted malicious wounding, and therefore we affirm appellant's convictions of those crimes. We also hold that the court erred by sentencing appellant for abduction in excess of the statutory maximum, and therefore we reverse that ruling and remand this case to the circuit court for the limited purpose of conducting a new sentencing hearing solely on that conviction.

Affirmed in part, reversed in part, and remanded.