PRESENT: Goodwyn, Mims, Powell, Kelsey, and McCullough, JJ., and Russell and Millette, S.JJ.

CANDACE RENE CALDWELL

v. Record No. 190541

COMMONWEALTH OF VIRGINIA

OPINION BY
SENIOR JUSTICE LEROY F. MILLETTE
April 9, 2020

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal we consider whether the circuit court, and the Court of Appeals in affirming the circuit court's judgment, erred as a matter of law in convicting appellant of defrauding a hotel restaurant when she obtained food from the restaurant without paying. For the reasons stated herein we are of the opinion that there was error and will reverse the conviction.

I. BACKGROUND

Candace Rene Caldwell ("Caldwell") was indicted pursuant to Code § 18.2-188, which, under subsection (b)(2), makes it unlawful for any person who "without paying therefor, and with the intent to cheat or defraud the owner or keeper to . . . obtain food from a restaurant or other eating house." Caldwell was tried without a jury and found guilty as charged by the Circuit Court of Rockbridge County of the Class 1 misdemeanor. The circuit court sentenced Caldwell to thirty days in jail with all but four days suspended, imposed eight dollars of restitution plus court costs, and ordered that Caldwell shall not go onto the property of the innkeeper at any time.

The evidence at trial established that in March 2017 Caldwell gave a ride to two hikers emerging from the Appalachian Trail to escape an approaching storm.* The hikers asked

---

* The facts herein are taken from a Statement of Facts, which reflects that a written Joint Stipulation of Mark Arnn's account of the events was entered into evidence at trial in lieu of his live testimony.

Caldwell if she would drive them to a nearby hotel. She obliged and took them to the Country Inn & Suites of Lexington (the "hotel") because she had a discount coupon for that business, which she gave to the hikers to use. During the drive to the hotel, the hikers agreed that they would help Caldwell move some items from her home to a storage unit the next day. The hikers registered as guests at the hotel, which included a complimentary breakfast. Caldwell and one of the hikers, Mark Arnn, agreed they would meet at the hotel the following morning. When Arnn went downstairs from his hotel room the next morning he saw Caldwell waiting in the restaurant area and they ate breakfast together. Arnn stated that he "may have specifically invited her to eat breakfast," but he was "not sure exactly what [he] said to her." While they ate breakfast, it was agreed that the two hikers would walk to Caldwell's house later that morning to help her move some items and, in return, she would drive them to Waynesboro so they could resume hiking the trail from there. When Arnn finished eating, he left Caldwell at the table and returned to his room.

Thereafter, a member of the hotel's kitchen staff approached Caldwell and asked her to stop by the front desk to pay eight dollars for her meal. Caldwell did not pay, but approached the hotel's desk manager, who testified that Caldwell demanded to know why she had to pay for her breakfast. The manager informed Caldwell that "if you are not a guest in the hotel then this is what we require." She described that Caldwell began screaming that "it didn't matter because they were going to throw the food out anyways." The manager again asked Caldwell to pay the eight dollars. Caldwell refused to pay and asked the manager for the telephone number to the hotel's corporate office. The manager agreed that she could give Caldwell the corporate number, but told Caldwell that she still needed to pay for the meal or the manager would have to call the police. Caldwell did not pay, but started backing out of the hotel while continuing to yell at the

2

manager.  Another person noted Caldwell's license plate number as she drove away from the hotel.

The hotel manager further testified, when asked whether someone who was not a registered guest could eat breakfast at the hotel, that "[y]ou're not supposed to.  I guess there's nothing written that says you can't."  She added that the hotel discourages non-overnight guests from eating breakfast but will serve them if they pay the cost of breakfast.

Deputy Dylan Welsh of the Rockbridge County Sheriff's Office testified that he received a call from the hotel about an "unpaying customer who had eaten breakfast and then fled the scene."  Deputy Welsh located Caldwell's home through DMV records associated with the license plate number.  He testified that Caldwell did not deny eating the breakfast but did not believe that she needed to pay for it.

Caldwell testified that Arnn, who was a guest of the hotel, did "in fact" invite her to have breakfast with him in the hotel restaurant.  The court allowed Caldwell's testimony as evidence of her state of mind with regard to her intent, but sustained the Commonwealth's hearsay objection to what Arnn said.  The court limited the defense to Arnn's stipulated statement, which was that he may have invited her to breakfast, but was not sure.  Continuing, Caldwell explained that after the staff member told her she had to pay for the breakfast, she engaged in conversation with the desk manager in an effort to resolve the dispute.  Caldwell said that she told Deputy Welsh that she offered to pay for the meal and that a surveillance video of her conversation with the manager would confirm that.

During its rebuttal, the Commonwealth recalled the hotel manager and the deputy, both of whom testified that they had no recollection that Caldwell either offered to pay for the meal or said that she had made the offer.  Deputy Welsh further testified that although there was no audio

3

to the surveillance video of Caldwell and the manager, one could clearly see Caldwell "being aggressive, very inappropriate, and 'shaking her hand at [the manager].'" The Commonwealth argued that this testimony rebutted Caldwell's testimony that she calmly and politely addressed the manager and offered to pay for her meal.

In closing arguments, Caldwell contended that there was no evidence that she intended to defraud the hotel *at the time she ate the breakfast*. She added that seeking out the manager at the front desk rather than simply leaving the premises indicated a lack of the requisite intent to defraud the hotel.

The Commonwealth argued there was no evidence that Caldwell was invited to breakfast and that Caldwell's "causing a scene" and leaving the hotel when the manager stated that she would call the police was evidence from which the court could infer Caldwell's intent to defraud. The Commonwealth further argued that Caldwell was not a guest and could not expect to eat a free breakfast. The judge found Caldwell guilty, stating:

> If you had paid that eight-dollar bill, when they said, 'Ma'am, you're not supposed to be eating here,' this would've been done and gone away. And I think that's the point at which the evidence turns against you, is that maybe you really didn't understand, although I believe any reasonable person would have, but maybe you didn't understand exactly that you couldn't just be invited by a guest. But once you were told, and you still didn't pay, I think it's clear at that point. You got the benefit of breakfast and refused to pay for it.

Caldwell appealed her conviction to the Court of Appeals, arguing that the plain language of Code § 18.2-188(b)(2) requires proof of specific intent to defraud at the time the benefit is received; that is, when she ate the breakfast, not after. She submitted that the Court of Appeals had previously considered the import of the specific intent requirement of Code § 18.2-188 in its unpublished opinion in *Morton v. Commonwealth*, Record No. 0864-98-4, 1999 WL 1129728

4

(July 20, 1999), which, by implication, adopted this Court's construction in *Cunningham v. Commonwealth,* 219 Va. 399, 402 (1978), of the phrase "intent to defraud" as used in a larceny by false pretenses statute, to require a finding of intent at the moment of obtaining the benefit. Caldwell argued that not only was the Commonwealth's evidence insufficient to prove she possessed the intent to defraud at the time she obtained the breakfast, but the circuit court's ruling also demonstrated that the court did not conclude that Caldwell possessed the intent to defraud at that requisite time. Therefore, argued Caldwell, the circuit court erred as a matter of law and her conviction should be overturned.

The Commonwealth argued that it was proper for the circuit court to infer the requisite intent from all of Caldwell's actions and statements. The Court of Appeals agreed, reciting that "intent is the purpose formed in a person's mind at the time an act is committed. Intent may, and often must, be inferred from the facts and circumstances of the case, including the actions and statements of the accused." *Johnson v. Commonwealth*, 53 Va. App. 79, 100 (2008) (quoting *Commonwealth v. Taylor*, 256 Va. 514, 519 (1998)). The court further stated that "[t]he statements and conduct of an accused after the events that constitute the charged crime may also be relevant circumstantial evidence of intent." *Simon v. Commonwealth*, 58 Va. App. 194, 206 (2011). The Court of Appeals denied Caldwell's appeal by unpublished per curiam order, holding that:

> The trial court's comments reflect that it did not think it reasonable for appellant to believe that she could partake in the hotel breakfast for free. However, even if appellant believed she could enjoy breakfast at the hotel for free, the trial court concluded that appellant possessed the requisite intent because appellant was informed by hotel staff that she was required to pay for the breakfast as she ate yet refused to do so. Thus, the record supports the trial court's conclusion that appellant obtained the benefit, breakfast, without paying, and acted with the requisite intent. The Commonwealth's evidence was competent, was not inherently

5

> incredible, and was sufficient to establish beyond a reasonable doubt that appellant was guilty of defrauding an innkeeper.

*Caldwell v. Commonwealth*, Record No. 0827-18-3 (January 17, 2019).  A three-judge panel of the Court of Appeals upheld the per curiam ruling "for the reasons previously stated" and without additional comment.  *Caldwell v. Commonwealth,* Record No. 0827-18-3 (April 15, 2019).

We granted Caldwell this appeal.  As she did in her appeal to the Court of Appeals, Caldwell charges the circuit court with erring as a matter of law by improperly convicting her under Code § 18.2-188 because the court did not find that she possessed the intent to defraud the hotel restaurant at the time she obtained the benefit.  Caldwell also contends that the Court of Appeals committed the same error of law in affirming the circuit court's judgment and by not finding that the circuit court's error of law constituted reversible error.

Caldwell maintains that Code § 18.2-188(b)(2) is a specific intent statute, which makes it essential that a court find that the individual charged under the statute possess the intent to cheat or defraud the innkeeper at the time food is obtained.  Relying on *Cunningham* and *Morton*, she submits that the statutory language "to obtain food" unambiguously means at the time she ate the breakfast.  She argues that the circuit court therefore committed errors of law when it applied an objective or reasonable person standard and when it concluded that Caldwell's intent was evident only after she had obtained the food and was told she had to pay for it.

At oral argument, Caldwell did not dispute the law upon which the Commonwealth bases its argument and acknowledged that it is permissible for a court to determine mens rea by inferring it from all the facts and circumstances of a case.  However, argued Caldwell, the circuit court's ruling foreclosed any such inference in this case.

Reiterating that Code § 18.2-188(b)(2) is a specific intent statute, Caldwell posits that, even viewing the evidence in the light most favorable to the Commonwealth, the court's ruling that "maybe [Caldwell] really didn't understand . . . [b]ut once [she] was told, and [she] still didn't pay, I think it was clear at that point" and "[t]hat's the point at which the evidence turn[ed] against [Caldwell]" clearly demonstrates that the court did not find the essential element of specific intent beyond a reasonable doubt:  that Caldwell possessed the intent to cheat or defraud the hotel restaurant at the time she obtained the food.  Caldwell concludes that her conviction must be overturned.

We agree.

## II.  DISCUSSION

This case presents the Court with its first occasion to construe Code § 18.2-188(b)(2).  It is well-settled that issues of statutory interpretation are pure questions of law that this Court reviews de novo.  *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007).  "When the language of a statute is unambiguous, we are bound by the plain meaning of that language." *Id.*  For statutory language to be found unambiguous, the text must not be "understood in more than one way or refer[] to two or more things simultaneously [or] . . . [be] difficult to comprehend, [be] of doubtful import, or lack[] clearness or definiteness." *See Boynton v. Kilgore,* 271 Va. 220, 227 n.8 (2006) (citation omitted).

Code § 18.2-188(b)(2) provides that "[i]t shall be unlawful for any person, without paying therefor, and with the intent to cheat or defraud the owner or keeper to . . . [o]btain food from a restaurant or other eating house."  The word "obtain" is not defined in the statute and, thus, must be given its plain, ordinary meaning.  *Lawlor v. Commonwealth*, 285 Va. 187, 237 (2013) (citation omitted).  Webster's Third New International Dictionary 1559 (1993), defines

obtain as "to gain or attain possession or disposal of usually by some planned action or method."

It is not ambiguous. Likewise, we find the phrase "to obtain food" to be plain and unambiguous.

Applying this plain language, we conclude that Caldwell "obtain[ed] food," as that phrase is used

in the statute, at the time she gained possession of the breakfast with the intent to eat it.

Obtaining food from a restaurant or other eating house, however, is but one of the

essential elements of the statutory crime at issue. The Commonwealth was also required to

prove that Caldwell did not pay for the food and that she obtained the food with the intent to

cheat or defraud the owner or keeper. It is undisputed that Caldwell did not pay for the breakfast

that she consumed at the hotel. Thus, the remaining element of the crime we must address is

whether there was proof of Caldwell's intent to defraud or cheat the hotel restaurant.

We have held that:

> [W]here a statute makes an offense consist of an act combined
> with a particular intent, such intent is as necessary to be proved as
> the act itself, and it is necessary for the intent to be established as a
> matter of fact before a conviction can be had. Surmise and
> speculation as to the existence of the intent are not sufficient, and
> 'no intent in law or mere legal presumption, differing from the
> intent in fact, can be allowed to supply the place of the latter.'

*Dixon v. Commonwealth*, 197 Va. 380, 382 (1955) (quoting *Thacker v. Commonwealth,* 134 Va.

767, 770 (1922)). Further, "we review factfinding with the highest degree of appellate

deference" and do not ask whether this Court "believes that the evidence at the trial established

guilt beyond a reasonable doubt." *Vasquez v. Commonwealth*, 291 Va. 232, 236, 248 (2016)

(citations omitted). "Rather, the relevant question is whether 'any rational trier of fact could

have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* In addition,

because the appellant was convicted by a circuit court sitting without a jury, the circuit court's

judgment is entitled to the same weight as a jury verdict and will not be disturbed on appeal

8

unless it is "plainly wrong or without evidence to support it." *King v. Commonwealth,* 217 Va. 601, 604 (1977); Code § 8.01-680. However, "it is just as obligatory upon the appellate court, to set aside . . . the judgment of a court, when it is, in its opinion, contrary to the law and evidence, and therefore plainly wrong, as it is to sustain it when the reverse is true." *Bland v. Commonwealth,* 177 Va. 819, 821 (1941).

Having established that to "obtain food" as used in the statute unambiguously refers to when the food is possessed with the intent to eat it, coupled with the statute's equally plain language that requires "the intent to cheat or defraud the owner or keeper to . . . [o]btain food from a restaurant or other eating house," we conclude that Code § 18.2-188(b)(2) required proof that Caldwell had the intent to cheat or defraud the hotel restaurant at the time she gained possession of the food.

However, viewing the evidence in the light most favorable to the Commonwealth, and giving the highest deference to the circuit court's factual findings, we cannot say that any rational trier of fact could have found the essential elements of the crime at issue beyond a reasonable doubt. Rather, the circuit court's finding – that maybe Caldwell did not understand that she could not just be invited by a guest, but when she was told she had to pay for the food and did not, that was "the point at which the evidence turned against" her and it "was clear at that point" – reflects the exact opposite: that the court had reasonable doubt as to Caldwell's intent to defraud at the time she gained possession of the food. Such "surmise and speculation" by the court as to the existence of Caldwell's intent to defraud or cheat is insufficient, and "no intent in law or mere legal presumption, differing from the intent in fact, can be allowed to supply the place of the latter." *See Dixon,* 197 Va. at 382. Accordingly, we are of the opinion that the

9

circuit court's finding of guilt, and the Court of Appeals' judgment affirming that conviction, are contrary to the law and evidence and therefore plainly wrong.

## III. CONCLUSION

For the foregoing reasons we will reverse the judgment of the Court of Appeals and dismiss the indictment.

*Reversed and dismissed.*