# VIRGINIA:

*In the Court of Appeals of Virginia on* **Tuesday** *the* **20th** *day of* **September, 2022**.

Michael Melvin Fary,                                                                                      Appellant,

against          Record No. 1079-21-2
                 Circuit Court Nos. CR20-60(00) through CR20-60(06) and CR20-60(12)

Commonwealth of Virginia,                                                                        Appellee.

Upon a Petition for Rehearing En Banc

Before the Full Court

On September 6, 2022 came the appellant, by counsel, and filed a petition requesting that the Court set aside the judgment rendered herein on August 23, 2022, and grant a rehearing *en banc* on the issue raised in the petition.

On consideration whereof and pursuant to Rule 5A:35 of the Rules of the Supreme Court of Virginia, the petition for rehearing *en banc* is granted and the appeal of those issues is reinstated on the docket of this Court. The mandate previously entered herein is stayed pending the decision of the Court *en banc*.

The parties shall file briefs in compliance with the schedule set forth in Rule 5A:35(b). The appellant shall attach as an addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the Court in this matter. An electronic version of each brief shall be filed with the Court and served on opposing counsel.[1]

A Copy,

Teste:

A. John Vollino, Clerk

By:    *original order signed by a deputy clerk of the*
       *Court of Appeals of Virginia at the direction*
       *of the Court*
       Deputy Clerk

---

[1] The guidelines for filing electronic briefs and appendices can be found at www.courts.state.va.us/online/vaces/resources/guidelines.pdf.

Present:   Judges Humphreys, Causey and Senior Judge Clements
Argued at Richmond, Virginia


MICHAEL MELVIN FARY

                                          MEMORANDUM OPINION[*] BY
v.        Record No. 1079-21-2              JUDGE JEAN HARRISON CLEMENTS
                                               AUGUST 23, 2022
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF KING WILLIAM COUNTY
Thomas B. Hoover, Judge

Devin G. Hensley (Martin, Ingles & Hensley Ltd., on brief), for
appellant.

Timothy J. Huffstutter, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Following a bench trial, the Circuit Court of King William County convicted appellant of

seven counts of attempted malicious wounding, in violation of Code §§ 18.2-26/18.2-51, and one

count of reckless operation of a boat, in violation of § 29.1-738.  The circuit court sentenced him

to a total of thirty-five years and twelve months, with twenty-one years and six months

suspended, and an active jail sentence of two years and six months with ten years of supervised

probation.  On appeal, appellant challenges the sufficiency of the evidence to support his

convictions for attempted malicious wounding.  For the following reasons, we affirm the trial

court's judgment.

                                   BACKGROUND

"Because the Commonwealth was the prevailing party below, we 'view the record in the

light most favorable to the Commonwealth[,]' granting it any inferences that flow from that view."

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

*Massie v. Commonwealth*, 74 Va. App. 309, 315 (2022) (quoting *Delp v. Commonwealth*, 72 Va. App. 227, 230 (2020)).

On July 18, 2020, appellant and his girlfriend were riding on appellant's "jon boat" along the Mattaponi River to deliver fishing supplies to appellant's son. After approximately twenty minutes on the water, appellant's boat ran out of gas, causing it to stop "in the middle of the channel." The channel was "not that wide right there" and "pretty shallow on both sides" which made stopping in the middle of the channel a "safety issue," according to the conservation officer who responded to the incident in question. As appellant was switching the gas tanks on his boat, another boat approached, a seventeen-foot "seabird," carrying Douglas Creekmore, Lindsay Creekmore, (his wife), their one-and-a-half-year-old daughter, as well as their friend Gretchen Frayser and her three minor children. According to Mr. Creekmore's testimony, the Creekmores' boat "went up to the right of [appellant's] boat to try to keep as less wake as possible." As the Creekmores' boat passed appellant's boat, Mr. Creekmore watched "[appellant's] boat rock," and he continued driving the boat onward, thinking "everything [was] fine."

Moments later, Mr. Creekmore looked back and saw appellant's boat following him as they made their way downriver. Mr. Creekmore then turned his boat around and headed towards a dock at Rainbow Acres, hoping that appellant at that point "would quit following [them]." Appellant's boat proceeded to turn around as well and continued following the Creekmores' boat to the dock. According to Mr. Creekmore's testimony, upon arriving at the dock, appellant "came up behind us and said, "You fucking wanna [sic] swamp me?" Mr. Creekmore testified that appellant continued cursing at him and proceeded to drive his boat directly into the back stern of the Creekmores' boat. According to Mr. Creekmore, as everyone in the Creekmores' boat was "screaming," appellant drove his boat again into the Creekmores' boat, this time "near where the driver's seat is." The beachmaster at Rainbow Acres, who was present at the time, also testified that he observed

appellant's boat "slam into" the Creekmores' boat, "back off, and slam into it a second time." The beachmaster testified that the "yelling match" continued. According to Mr. Creekmore, after he turned around once again and looked at appellant, appellant "[threw] up his hands," apologized, and went back upriver.

At that point, Mr. Creekmore noticed that appellant's boat had "nudged" the head of Ms. Frayser's youngest son, six years old at the time, who was sitting in the backseat of the boat. According to Ms. Frayser, appellant's boat made contact with the child's head during the first collision. The child complained that "his head hurt" and he had a "goose egg on his head," but there were no signs of a concussion. The conservation officer also examined the child and found no open wound or bleeding. The officer did note, however, a knot above the child's right ear. The Creekmores' boat remained operational, and the damages were "cosmetic," amounting to approximately $500 in repairs.

The responding conservation officer obtained appellant's boat registration number and visited appellant's residence on record. Upon arrival, the officer spoke with appellant who indicated "that he knew why [the officer] was there." During the meeting, appellant informed the officer that while his boat "was adrift in the channel . . . [another] boat came around the bend at a high rate of speed. . . . [H]e was worried that it was going to wash his boat or swamp his vessel. He stated at that point he initiated his till steer engine and began to follow the boat downriver." According to the officer, appellant was "pissed off." Appellant informed the officer that he "bumped the boat" after following it to the dock at Rainbow Acres, and "got into a verbal confrontation" with the passengers of the boat. Appellant did not inform the officer that he collided with the Creekmores' boat a second time.

At the conclusion of the Commonwealth's evidence, appellant moved to strike the Commonwealth's case pertaining to the attempted malicious wounding charges, arguing that there

was no evidence demonstrating appellant had the requisite "intent to cause grievous or bodily injury or maiming." The trial court overruled the motion to strike, finding that the Commonwealth had presented sufficient evidence to move forward with the charges.

Appellant then presented testimony of his girlfriend, Carol Messler, who was with appellant on his boat during the incident. Ms. Messler testified that while appellant's boat was stopped in the middle of the channel, the Creekmores' boat came "very, very close, and they didn't slow down. [She] waved [her] arms. They had to have been within 8 feet, 10 feet of [appellant's boat], enough that it rocked the boat pretty good. . . . [T]hey just kept right on going." According to Ms. Messler, appellant was "upset," but not angry.

Ms. Messler denied that she and appellant intended to follow the Creekmores' boat initially, stating that they "had to go downriver anyway, because that's where [they] put the boat down in at." However, when the Creekmores' boat turned around towards Rainbow Acres, she and appellant saw the Creekmores again and felt the need "to talk to them because [of their] dangerous boating." Ms. Messler testified that, when appellant's boat reached the dock at Rainbow Acres, the Creekmores' boat "had stopped at the end of the dock, and we thought they were gonna [sic] continue. And [appellant] was trying to slow the boat down, and we caught into the side. There was nowhere to turn to avoid it." Ms. Messler did not recall appellant cursing at the Creekmores during the confrontation.

Appellant testified that after the Creekmores' boat passed his boat within eight to ten feet, he "continued on behind them, but they were . . . a good ways in front of [him]." When he saw that they had turned around en route to Rainbow Acres, appellant reversed course as well so he could "talk to them." According to appellant, as his boat approached the dock, he intended to "swing around behind them . . . to wake him the way he did me." Appellant acknowledged that he

previously saw young children in the Creekmores' boat without life preservers and confirmed his understanding that waking the Creekmores' boat could have caused the children to fall off the boat.

According to appellant, when he arrived at the dock, he attempted to "let off the gas, and the wake behind me was shoving me that way, and I couldn't stop." Appellant testified that his boat then "hit the pole to try to . . . stop from hitting the boat." When his boat made contact with and "rode up on" the other boat, appellant attempted to "throw it in reverse," but "the motor had locked down [and] . . . revved up out the water." At that point, according to appellant, one of the girls in the Creekmores' boat was able to push the boats away from each other. Appellant testified that he then "reached back to try to . . . put the motor back, [and] it went all the way back forward and [his boat] rode up on them again." Appellant stated that he and Mr. Creekmore continued "yelling back and forth at each other." Eventually, according to appellant, they apologized to each other and appellant regained control of the motor and drove his boat back upriver.

After hearing the arguments of the parties, the trial court convicted appellant of all seven counts of attempted malicious wounding and one count of reckless operation of a boat.[1] This appeal followed.

ANALYSIS

Appellant argues that there was insufficient evidence to establish that he had "the specific intent to maliciously wound anyone when his boat came into contact with the victims' boat." According to appellant, the evidence demonstrates, at most, that he intended "to confront Mr. Creekmore about being swamped and wanted to cause a wake to hit against the Creekmores' boat." Appellant maintains that the collisions occurred due to his boat's engine "stall[ing] out" and that he did not have control of his boat at the time of the collisions. He emphasizes that the contact

---

[1] The trial court found appellant not guilty of leaving the scene of a boating accident with property damage and dismissed that charge.

between the boats "was minimal" and that the Creekmores' boat incurred only cosmetic damage. While appellant admits that his actions were "reckless," he argues that recklessness "is not the specific intent required to convict [him] of seven counts of attempted maiming."

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

It is a crime to "maliciously shoot, stab, cut, or wound any person or by any means cause him bodily injury, with the intent to maim, disfigure, disable, or kill[.]" Code § 18.2-51. "An attempt to commit a crime is composed of two elements: (1) The intent to commit it; and (2) a direct, ineffectual act done towards its commission." *Fletcher v. Commonwealth*, 72 Va. App. 493, 506 (2020) (quoting *Haywood v. Commonwealth*, 20 Va. App. 562, 565 (1995)). "Because intent is a 'state of mind,' it 'may be proved by a person's conduct or by his statements.'" *Id.* (quoting *Barrett v. Commonwealth*, 210 Va. 153, 156 (1969)). "The 'intent to commit malicious wounding' is the intent to 'maliciously shoot, stab, cut or wound any person or by any means

cause bodily injury with the intent to maim, disfigure, disable or kill[.]'" *Id.* at 507 (quoting Code § 18.2-51).

"The presence of malice 'is a question of fact to be determined by [the trier of fact].'" *Id.* (quoting *Long v. Commonwealth*, 8 Va. App. 194, 198 (1989)). "Malice is evidenced either when the accused acted with a sedate, deliberate mind, and formed design, or committed any purposeful and cruel act without any or without great provocation." *Id.* (quoting *Branch v. Commonwealth*, 14 Va. App. 836, 841 (1992)). "Malice may be inferred from the 'deliberate use of a deadly weapon[.]'" *Id.* (quoting *Strickler v. Commonwealth*, 241 Va. 482, 495 (1991)).

The trial court emphasized the beachmaster's testimony regarding his observations of the incident. Specifically, the beachmaster observed appellant and Mr. Creekmore yelling at each other and appellant's boat "slam[ming] into the larger boat, back[ing] off, and slam[ming] a second time." The trial court also emphasized the evidence indicating that the collisions were "large enough that [appellant's boat] rode up [on Mr. Creekmore's boat]." The trial court did not accept appellant's account regarding the impact of the collisions. The trial court also did not accept the testimony of appellant's girlfriend as credible and found that the evidence established that appellant was "angry and upset" at the time of the incident and committed an "intentional and malicious act" when he drove his boat twice into the Creekmores' boat.

"[T]he credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters solely for the fact finder's determination." *Fletcher*, 72 Va. App. at 502 (quoting *Crawley v. Commonwealth*, 29 Va. App. 372, 375 (1999)). "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)); *see also Hall v. Commonwealth*, 69 Va. App. 437, 449-50 (2018). "When

'credibility issues have been resolved by the [fact finder] in favor of the Commonwealth, those findings will not be disturbed on appeal unless plainly wrong.'" *Towler v. Commonwealth*, 59 Va. App. 284, 291 (2011) (quoting *Corvin v. Commonwealth*, 13 Va. App. 296, 299 (1991)). The appellate court "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Wright v. West*, 505 U.S. 277, 296-97 (1992) (quoting *Jackson v. Virginia*, 443 U.S. 307, 326 (1979)).

Here, the trial court permissibly rejected the testimony of appellant and appellant's girlfriend and based its findings regarding appellant's intent on the totality of the evidence. Accordingly, the trial court did not err by convicting appellant of seven counts of attempted malicious wounding.

CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed*.

Causey, J., dissenting.

Appellant did not have the mens rea required for seven counts of attempted malicious wounding, in violation of Code §§ 18.2-51 and 18.2-26. Thus, I respectfully dissent from the majority affirmance of appellant's convictions.

When considering a challenge to the sufficiency of the evidence supporting a conviction, an appellate court reviews the facts "in the light most favorable to the Commonwealth, the prevailing party at trial." *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381 (2016)). After reviewing the evidence in the light most favorable to the Commonwealth, the court must ask whether "any rational trier of fact would have found the essential elements of the crime beyond a reasonable doubt." *Maldonado v. Commonwealth*, 70 Va. App. 554, 562 (2019). Here, even viewing the evidence in this light, the Commonwealth has not proved that the appellant had the specific intent to maliciously wound the passengers on the Creekmores' boat. Thus, it has failed to prove an essential element of the offense beyond a reasonable doubt.

The malicious wounding statute states that it is a crime to "maliciously shoot, stab, cut, or wound any person or by any means cause him bodily injury, with the intent to maim, disfigure, disable, or kill[.]" Code § 18.2-51. Moreover, an "attempt" is "an apparent unfinished crime," and contains "two elements, viz: (1) The intent to commit a crime; and (2) a direct act done towards its commission, but falling short of the execution of the ultimate design." *Sizemore v. Commonwealth*, 218 Va. 980, 983 (1978) (quoting *Glover v. Commonwealth*, 86 Va. 382, 385-86 (1889)). At issue here is the first element, the intent to commit a crime.

"The intent required to be proven in an attempted crime is the *specific intent* in the person's mind to commit the particular crime for which the attempt is charged." *Wynn v. Commonwealth*, 5 Va. App. 283, 292 (1987) (emphasis added); *see Merritt v. Commonwealth*,

164 Va. 653, 660 (1935) ("[W]hile a person may be guilty of murder though there was no actual intent to kill, he cannot be guilty of an attempt to commit murder unless he has a specific intent to kill."). Moreover, the substantive offense, here, malicious wounding, requires "that the accused ha[ve] the *specific intent* to 'maim, disfigure, disable or kill' the victim of the attack."[2] *Commonwealth v. Vaughn*, 263 Va. 31, 35 (2002) (emphasis added). Therefore, the mens rea required for an attempted malicious wounding offense is the specific intent to "'maim, disfigure, disable or kill' the victim of the attack." *Id.* Recklessness is not sufficient to meet the requisite mens rea for crimes of attempt. *See Haywood v. Commonwealth*, 20 Va. App. 562, 566 (1995) (highlighting the distinction between reckless actions and crimes of specific intent in reversing the appellant's conviction for attempted capital murder of a police officer).

"Th[e] specific intent at the time the act is done is essential. To do an act from general malevolence is not an attempt to commit a crime, because there is no specific intent, though the act according to its consequences *may* amount to a substantive crime." *Thacker v. Commonwealth*, 134 Va. 767, 770 (1922) (emphasis added). Regarding crimes of attempt, the Court in *Haywood* explained that "[w]hen we say that a man attempted to do a given wrong, we mean that he intended to do it specifically; and proceeded a certain way in the doing. The intent in the mind covers the thing in full; the act covers it only in part." 20 Va. App. at 566. "The test of the offense of maliciously or unlawfully causing bodily injury *is the intent with which the result is accomplished rather than the nature of the means*, where the means are specified and established." *Dawkins v. Commonwealth*, 186 Va. 55, 63 (1947) (emphasis added). "Thus, *the*

---

[2] The word "maim" means a permanent and not merely a temporary and inconsequential disfigurement. 56 C.J.S. *Mayhem* § 11 (2022 Update). Additionally, the word "disfigure" also means permanent and not merely temporary and inconsequential disfigurement. Similarly, "disable" refers to permanent, not temporary, disablement. *See Campbell v. Commonwealth*, 12 Va. App. 476, 484 (1991) (en banc).

*failure to prove an intent to wound* is fatal in a trial for attempted malicious wounding." 1

Va. Crim. Law & Proc. § 18.4 (2022) (emphasis added).

For example, in *Small v. Commonwealth*, No. 1511-08-3, 2009 WL 4791805, at \*6

(Va. Ct. App. Dec. 15, 2009), the Court held that there was no specific intent to maliciously

wound when the defendant bent the victim's fingers back, scratched her, and stepped on her foot,

but only intended to do no more than scare the victim. In contrast, in *Slusher v. Commonwealth*,

196 Va. 440, 446 (1954), the Court held that there was specific intent to maliciously wound

when the defendant verbally and continuously threatened to kill the victim while holding him at

knifepoint, and his action was unprovoked and without excuse. As these cases show, while "a

person is presumed to intend the immediate, direct, and necessary consequences of his voluntary

act," the court must also examine the appellant's specific intent at the time of the incident, not

simply the possible consequences of the appellant's actions. *Nobles v. Commonwealth*, 218 Va.

548, 551 (1977); *see Merritt*, 164 Va. at 661; *compare Moody v. Commonwealth*, 28 Va. App.

702, 707 (1998) (holding the appellant had specific intent when he deliberately chose to

accelerate into the pedestrian, never decelerating, or swerving to avoid the pedestrian), *with*

*Haywood*, 20 Va. App. at 568 (holding it would be unreasonable to infer that the direct

consequence of appellant running through two roadblocks while being pursued by the police

would have been injury or death).

Additionally, to support a finding of malicious wounding, "a person must intend to

permanently, not merely temporarily, harm another person." *Burkeen v. Commonwealth*, 286

Va. 255, 259 (2013). Moreover, "[a]n intent to maim or disfigure cannot be presumed from an

act which does not naturally bespeak such intent." *Banovitch v. Commonwealth*, 196 Va. 210,

217 (1954).

The majority notes that the trial court correctly found that the appellant acted with the requisite intent, referencing the trial court's findings "that appellant was 'angry and upset' at the time of the incident" and that appellant "committed an 'intentional and malicious act' when he drove his boat twice into the Creekmores' boat." However, these facts, in conjunction with the other facts favoring the Commonwealth, are not enough to prove that, in angrily and intentionally driving his boat into the Creekmores' boat, appellant had the specific intent to maim, disfigure, disable, kill, or otherwise permanently harm any of the occupants of the Creekmores' boat. The Creekmores conceded that there was only minor damage to their boat (see below) and that appellant's boat was "creeping forward" in neutral but was not in gear at the time of contact.



Additionally, the Creekmores conceded that appellant "backed his motor off" when approaching their boat. Mr. Creekmore also noted that they did not observe appellant take any

action to propel his jon boat into Mr. Creekmore's boat. Also, significantly, as the Commonwealth's exhibits show, appellant was driving a jon boat with a 30-horsepower motor which is smaller in size than the Creekmores' boat with a 115-horsepower motor.



Mr. Creekmore's (victim) boat (above)



Mr. Fary's (appellant) boat (above)

The disparity in the size of the boats shows that, because it is unlikely that appellant could have seriously injured a person on the Creekmores' boat, appellant likely thought his boat would not injure anyone, and thus appellant likely did not have the specific intent to commit malicious wounding. The trial court also never found, nor do the facts indicate, that appellant had the intent of using his boat to hit anything other than the Creekmores' boat. This case is more like *Small* than *Slusher*, discussed above.

- 13 -

Appellant "confirmed his understanding that waking the Creekmores' boat could have caused the children to fall off the boat." Children falling off the boat, into the water, however, is not the type of injury contemplated by the malicious wounding statute.[3] The facts also do not show that appellant specifically intended for children to fall off the boat and drown. Additionally, though a child aboard the Creekmores' boat had a goose-egg on his/her head after the altercation, this injury is not enough to prove any specific intent to maim, disfigure, disable or kill. In fact, the minor nature of the injury is evidence that appellant did not intend for his actions to permanently harm anyone. *See Campbell v. Commonwealth*, 12 Va. App. 476, 483 (1991) (en banc) ("The nature and extent of the bodily injury and the means by which accomplished may reflect [the] intent [to maim, disfigure, disable or kill] but are not exclusive factors.").

Appellant concedes that his actions were reckless. As the Court in *Haywood* explained, however, the question in this case is not whether the appellant's actions might have resulted in a malicious wounding, but whether the appellant, when driving his boat, formed the specific intent to use his boat to maim, disfigure, disable, or kill any of the occupants of the Creekmores' boat.

Based on the facts here, no rational trier of fact could conclude that the appellant wished to maliciously wound anyone on the Creekmores' boat. At the least, appellant acted recklessly, and if he acted intentionally, his actions only demonstrate an intent for the boats to collide with each other. Because the evidence does not show specific intent to maim, disfigure, disable, kill, or otherwise permanently harm the people on the Creekmores' boat, the evidence is insufficient to uphold the seven attempted malicious wounding convictions. I would reverse and vacate the appellant's convictions.

For the reasons stated above, I respectfully dissent.

---

[3] *See supra* note 2.