COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Coleman and Lemons*
Argued at Richmond, Virginia


MICHAEL ANTHONY WINSTON
                                              OPINION BY
v.    Record No. 1000-99-2        JUDGE JAMES W. BENTON, JR.
                                            JULY 18, 2000
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                    Margaret P. Spencer, Judge

          Maureen L. White for appellant.

          Steven A. Witmer, Assistant Attorney General
          (Mark L. Earley, Attorney General, on brief),
          for appellee.


     A jury convicted Michael Anthony Winston of unlawful

wounding.  On appeal, Winston contends the trial judge erred in

recalling to the venire panel a person whom the judge had

previously struck for cause.  He also contends the trial judge

erred in denying his motion for a mistrial after a witness

testified that Winston committed prior bad acts.  For the reasons

that follow, we reverse the conviction and remand for further

proceedings.

---

     * Justice Lemons participated in the hearing and decision of
this case prior to his investiture as a Justice of the Supreme
Court of Virginia.

I.

The grand jury indicted Winston for malicious wounding, in violation of Code § 18.2-51. Prior to trial, Winston made a motion in limine to bar one of the Commonwealth's witnesses from testifying about thefts, prior assaults, or other prior bad acts committed by Winston. The trial judge denied the motion, ruling that the purpose of the request was to sanitize the evidence.

A panel of twenty-two prospective jurors was assembled for Winston's trial. During voir dire, the trial judge removed for cause three prospective jurors, leaving only nineteen prospective jurors from which to select a jury. When the trial judge realized only nineteen prospective jurors remained, she informed both counsel that the options were to either continue the trial to another day or agree that one side would take one less strike. Winston's counsel informed the judge that Winston wanted his "statutory right to a panel of twenty." At the prosecutor's suggestion, the judge reinstated to the panel a person who had been removed for cause. The trial judge conditioned the reinstatement of that person upon the prosecutor's agreement to exercise his first strike to remove that person. After the trial judge overruled Winston's objection, the prosecutor struck from the panel the person who previously had been removed for cause.

At the trial, Isaac Squire testified that he and his wife separated because he was using controlled narcotics. Squire's wife then began a relationship with Winston. Over Winston's objection, Squire testified that two months after the separation, Winston telephoned Squire and threatened to kill Squire and Squire's wife.

Five months after their separation, Squire went to his wife's home where Winston often stayed. Squire testified that his wife had invited him and that he went there to settle things peaceably. Winston answered the door wearing Squire's robe. When Squire asked Winston to remove the robe and to leave the house, Winston went upstairs and removed the robe. Winston returned to the front door, where an argument between the two men ensued. Squire testified that Winston pushed the door into Squire's eye as Winston came outside. Squire testified that when Winston said Squire's eye was swollen, he told Winston, "Swell my eye like you swole my wife's eye." Referring to the motion _in limine_, Winston's counsel objected to that testimony and moved for a mistrial. The trial judge overruled the objection and denied the motion for a mistrial.

Squire testified that he and Winston were threatening each other. Squire also testified that he could not see Winston's hands. Consequently, Squire pretended that he had a weapon by putting his "hands behind [his] back like [he] had something." During the argument, Squire told Winston he did not have a weapon and displayed his hands. Winston did the same. The men then fought with their fists. Squire testified that he began to walk away and that Winston walked toward the house. Squire said he returned after Winston verbally provoked him. They resumed the fistfight and the fighting "got rough." Squire testified that during the fight he saw a pair of scissors in Winston's hand. As he tried to get away, Winston stabbed him in the back with the scissors.

A police officer testified that she interviewed Squire at the hospital where he was treated for a stab wound. Later, she arrested Winston and recovered a pair of scissors. Another officer testified that Winston had a large bandage on his back that was "two by two inches."

Winston testified that he had lived with Squire's wife for six months. He testified that Squire had previously threatened him. On the day Squire came to the house, Squire, a bigger man, was acting aggressively with his hand behind his back. Winston said he grabbed scissors because he believed Squire had a weapon. Squire threatened to kill him, pulled him out the door, and had a sharp piece of metal in his hand. During the fight, he stabbed Squire with the scissors.

At the conclusion of the evidence at the guilt phase, the trial judge invited Winston's counsel to proffer "any reason you think [Winston] was prejudiced by the Court's action in allowing the Commonwealth to strike [the person who was reinstated on the panel]." Winston's counsel did not make such a proffer. The jury convicted Winston of unlawful wounding.

## II.

In pertinent part, Code § 8.01-357 provides that "[o]n the day on which jurors have been notified to appear, jurors not excused by the court shall be called in such manner as the judge may direct to be sworn on their <u>voir</u> <u>dire</u> until a panel <u>free</u> <u>from</u> <u>exceptions</u> shall be obtained." (Emphasis added). In addition, Code § 8.01-358 provides as follows:

> The court and counsel for either party shall
> have the right to examine under oath any
> person who is called as a juror therein and

> shall have the right to ask such person or juror directly any relevant question to ascertain whether he is related to either party, or has any interest in the cause, or has expressed or formed any opinion, or is sensible of any bias or prejudice therein; and the party objecting to any juror may introduce any competent evidence in support of the objection; and <u>if it shall appear</u> to the court <u>that the juror does not stand indifferent in the cause, another shall be</u> drawn or called and <u>placed in his stead for the trial of that case</u>.

(Emphasis added). "Twelve persons from a panel of twenty shall constitute a jury in a felony case." Code § 19.2-262(2).

These statutes guarantee an accused the right to a panel of twenty potential jurors who are "free from exceptions" and "stand indifferent in the cause." <u>Justus v. Commonwealth</u>, 220 Va. 971, 975-76, 266 S.E.2d 87, 90 (1980). Virginia law is unequivocal that "[i]t is the duty of the trial [judge], through the legal machinery provided for that purpose, to procure an impartial jury to try every case." <u>Salina v. Commonwealth</u>, 217 Va. 92, 93, 225 S.E.2d 199, 200 (1976); <u>see</u> <u>also</u> Va. Const. art. I, § 8.

The Commonwealth concedes that the trial judge erred in restoring to the panel the person who earlier was removed for cause; however, the Commonwealth argues that the error was harmless. We disagree. The principle is ancient that the "statutory requirements for impaneling jurors are mandatory." <u>Kennedy v. Commonwealth</u>, 168 Va. 721, 726, 191 S.E. 634, 635-36 (1937). Thus, any "departure from a strict observance of the statutory provisions," when done "over the protest of the accused . . . constitutes reversible error." <u>Elkins v. Commonwealth</u>, 161 Va. 1043, 1047, 171 S.E. 602, 603 (1933). Applying these

principles in Breeden v. Commonwealth, 217 Va. 297, 298, 227 S.E.2d 734, 735 (1976), the Supreme Court held that reversible error occurred when the accused was denied "a right to an impartial jury drawn from 'a panel [of twenty] free from exceptions.'"  Id. at 300, 227 S.E.2d at 737 (citation omitted).

This violation of Winston's statutory right to a panel of twenty jurors "free from exception" was presumptively prejudicial.  The trial judge reinstated to the panel a person who was not impartial and free from prejudice.  The potential juror's presence on the panel denied Winston the opportunity to have another impartial person selected to sit as a juror.  That additional juror may not have been struck by the prosecutor if a full panel of twenty potential jurors had been provided. Indeed, we have held that "where [an accused], as here, . . . elects to stand on the statutory mandate of a panel of twenty jurors, . . . he is entitled to a full panel of impartial jurors and may not be required to accept a lesser number simply because the Commonwealth agrees to waive one or more of its peremptory strikes."  Fuller v. Commonwealth, 14 Va. App. 277, 281-82, 416 S.E.2d 44, 47 (1992).

The Commonwealth contends that by exercising one of its peremptory strikes against the biased potential juror, it removed any prejudice to Winston and cured any error which occurred when the trial judge re-seated the person she had stricken for cause. We addressed a similar issue in DeHart v. Commonwealth, 19 Va. App. 139, 449 S.E.2d 59 (1994).  The trial judge had refused to

strike for cause a potential juror, who, when asked "whether she would base her decision on what she had read in the newspapers, . . . replied that she 'would try not to, but I can't honestly say I wouldn't use it because it is in my mind.'"  Id. at 140, 449 S.E.2d at 60.  As in this case, the Commonwealth contended that DeHart was not prejudiced because the Commonwealth's attorney used a peremptory strike to remove the potential juror.  See id. at 142, 449 S.E.2d at 60.  Rejecting that argument, we held upon rehearing as follows:

> Had [the potential juror] been replaced by a venireman who was free from exception, the Commonwealth might have used the peremptory strike exercised against [the potential juror] to remove a venireman who actually served on the jury.  Thus, the composition of the jury panel that tried DeHart would have been different.  This denial of his right to a jury chosen from a statutorily prescribed panel of twenty free from exception cannot be deemed non-prejudicial.

DeHart v. Commonwealth, 20 Va. App. 213, 216, 456 S.E.2d 133, 134 (1995) (citation omitted).

Citing Breard v. Commonwealth, 248 Va. 68, 445 S.E.2d 670 (1994), the Commonwealth argued in DeHart that its use of a peremptory strike to remove the potential juror rendered the error harmless.  See 20 Va. App. at 214, 456 S.E.2d at 134.  The Commonwealth raises that same issue again in this case and rehashes the argument that we unanimously rejected in DeHart.  As we said in DeHart:

> The Supreme Court based its holding on Breard's failure to lodge a proper objection.  While the holding did not cite

Rule 5:25, it fell within the ambit of that rule. The statement relied upon by the Commonwealth addressed the applicability of the ends of justice exception to the operation of the rule.

20 Va. App. at 215, 456 S.E.2d at 134. This "ends of justice analysis" under Rule 5:25 is not the same as a harmless error analysis. See Brown v. Commonwealth, 8 Va. App. 126, 131, 380 S.E.2d 8, 10 (1989) (explaining that the "ends of justice" exception is only applied "where the error has resulted in manifest injustice"). Indeed, neither the Supreme Court nor this Court has ever engaged in a harmless error analysis concerning an error of this nature. See e.g., Medici v. Commonwealth, ___ Va. ___, ___, ___ S.E.2d ___, ___ (June 9, 2000) (holding that the trial judge's failure to strike for cause a prospective juror whose husband's murderer was represented by Medici's counsel's employer was reversible error).

Because this issue falls squarely within our prior decision, DeHart controls the resolution of this case. Accordingly, we hold that the procedure deprived Winston of a fundamental statutory right and constituted reversible error.

III.

Winston's motion in limine raised the concern that Squire would testify about previous incidents in which Squire claimed Winston committed bad acts. At trial, while explaining the events that occurred before the fight, Squire testified

concerning an accusation that Winston had caused physical harm to Squire's wife.

"Evidence that shows or tends to show [an accused] has committed a prior crime generally is inadmissible to prove the crime charged." Guill v. Commonwealth, 255 Va. 134, 138, 495 S.E.2d 489, 491 (1998). On the other hand, such evidence "is relevant and admissible if it tends to prove any element of the offense charged." Id. Yet, as we have noted, "the fact that evidence of other crimes is relevant does not end the inquiry as to whether it was admissible. In order for relevant evidence, which has prejudicial aspects, to be admissible, its probative value must outweigh its prejudice." Rodriguez v. Commonwealth, 18 Va. App. 277, 282, 443 S.E.2d 419, 423 (1994). In addition, we have also noted that "[t]he prejudicial effect of the evidence of other crimes [may be] limited by the instructions of the court to the jury . . . [delimiting] the jury's use of the evidence to that which was permissible and prohibited its use for any other purpose." Id.

In this case, the jury was required to determine Squire's and Winston's credibility. Thus, the admission of Squire's testimony about Winston's prior conduct causing the swelling of Squire's "wife's eyes" may have unfairly undermined Winston's credibility with the jury. On the other hand, the evidence had some tendency to prove the cause of the fight. On remand, the

trial judge is directed to consider the admissibility of the evidence in light of the principles here discussed.

For these reasons, we reverse the conviction and remand the case for further proceedings.

<u>Reversed and remanded.</u>