COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Friedman, Chaney and Lorish
Argued at Salem, Virginia


KEYON DA'MONTA PETTY

                                              MEMORANDUM OPINION* BY
v.       Record No. 0892-23-3                 JUDGE VERNIDA R. CHANEY
                                                 AUGUST 27, 2024

COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
                          F. Patrick Yeatts, Judge

          Jim D. Childress, III (Childress Law Firm, PC, on brief), for
          appellant.

          Tanner M. Russo, Assistant Attorney General (Jason S. Miyares,
          Attorney General, on brief), for appellee.


        A jury convicted Keyon Da'Monta Petty—17 at the time of the offense but tried as an

adult—of robbery by use of a firearm, use of a firearm during the commission of the robbery, and

possession of a handgun by a minor.[1]  Petty was sentenced to 29 years of incarceration,[2] with 8

years and 12 months suspended.  Petty asserts that the trial court erred by denying his motion to

strike a juror for cause.  This Court disagrees and affirms the trial court's judgment.

                                      BACKGROUND

        We review the evidence "in the 'light most favorable' to the Commonwealth, the

prevailing party in the trial court."  *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).  Doing so requires us to "discard the

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Petty also pleaded guilty to possession of a firearm by a convicted non-violent felon.

[2] Twenty-eight of those years are to be served in prison; twelve months, in jail.

evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

## I. Juror Willis's general voir dire responses

The trial court informed the potential jurors of the charges against Petty and explained that they would be questioned to ensure their ability to fairly sit in the case. The court then asked the questions mandated in Rule 3A:14 to determine whether any juror had pretrial prejudicial knowledge about the case, could follow the court's instructions on the defendant's presumption of innocence and the Commonwealth's burden of proof beyond a reasonable doubt, and had any bias in favor of either side. None of the jurors' responses indicated an inability to hear the case fairly.

During the Commonwealth's questioning, prospective juror Michael Willis acknowledged that he or a close family member or friend had been the victim of a crime: a friend of his had been a crime victim four years earlier in Baltimore. The incident resulted in charges being brought against the perpetrator. Willis said the experience would not affect his "ability to be fair and impartial to the Commonwealth and to the Defendant." When asked if he believed "a just result" had been reached in that case, Willis replied, "I'd rather not say." But he affirmed that he would be able to set aside the prior case and could decide this case on its merits.

During the defense's questioning, all the prospective jurors indicated that they understood and could adhere to the principles that the Commonwealth had to prove guilt beyond a reasonable doubt and that Petty was presumed innocent and did not have to testify on his own behalf.

## II. Juror Willis's individual voir dire responses

After the pool of prospective jurors exited the courtroom, Willis was brought back into the courtroom for additional questioning. There, Willis explained his reticence to state in open court regarding whether he believed a just result had been achieved in the case involving his friend in

Baltimore. "First time I was asked that question, just a little bit of a deterrent, I guess so many people around." Willis added that two men had beaten his friend "to a bloody pulp" on the sidewalk in front of Willis's home. Willis's roommate saw the beating in "real time" and "had the video footage of the entire incident." One of the assailants was arrested, but he was then released and failed to appear for his trial. Willis stated that "nothing [had] come to fruition" in that case. That result had jaded Willis's view of justice "a little bit."

Willis also referred to a second incident in Baltimore that occurred about eight months before the assault on his friend. In that case, an "acquaintance" had been shot and killed in an armed robbery at a neighborhood bar. Willis stated that the culprits "were apprehended to reach a plea agreement. The other one was extradited to Maryland to—to go under trial and was convicted, but, again, he was an acquaintance, like a friend." Willis then explained how that incident impacted how he viewed the justice system in Baltimore and how that issue was distinct from this case:

> [WILLIS]: So there's varying levels of, you know, how one might feel about the system—
>
> THE COURT: Yeah.
>
> [WILLIS]: In that area in particular. I've never had any like other run ins and I lived in South Florida, Virginia, here, Baltimore twice, Charleston so.
>
> THE COURT: Okay. Would you be able to set that experience aside with respect to the evidence in this case and be fair and impartial with respect to the evidence you hear and give both the Commonwealth—
>
> [WILLIS]: Yes, sir.
>
> THE COURT: and the Defendant—
>
> [WILLIS]: Different circumstances.
>
> THE COURT: Sure.
>
> [WILLIS]: Many years between. Obviously it's things are different in different areas. It's one of those where—

- 3 -

THE COURT: Yeah.

[WILLIS]: That's a different scenario. It, of course, leaves a bad taste . . . in your mouth but that instance is totally separate than what this may be or others may be.

THE COURT: Right.

[WILLIS]: Here, not here.

THE COURT: Understood.

Defense counsel then asked: "And despite the fact that today's charges here are also robbery with the use of a firearm, you think you can set aside both of those experiences?" Willis responded affirmatively.

### III. Motion to strike Juror Willis for cause

Then, defense counsel moved to strike Willis for cause, expressing concern that

> he has two experiences with armed robberies, one ending in death
> and I think what was more concerning to me was his statements that
> he has very mixed feelings about the judicial system as a whole
> given his experience with his friend being assaulted, robbed, the
> person being released on bond which he seemed to be disfavorable to
> and then now having absconded for essentially three years.

The Commonwealth opposed the motion, pointing to the different circumstances here and those in Maryland as well as Willis's statements during voir dire.

The trial judge denied the motion to strike Willis for cause, stating that he "was very adamant that he could be fair and impartial, set aside those experiences." The court stated that Willis's explanation about the failure to try his friend's attackers in the Maryland case

> certainly explains why he indicated that he didn't believe there was
> any sort of just verdict one way or the other. So but he did indicate
> that he lived in different locations, you know, he understands the
> process is sometimes different from jurisdiction to jurisdiction but
> he indicated that these other localities he lived in he never really
> seen any issues but that was more of an indictment with respect to
> prosecuting or not prosecuting, how quickly or how it really wasn't
> any sort of indictment on, you know, just—just anything that
> would pertain to Mr. Petty as a defendant in this particular case.

- 4 -

He said he could be fair and impartial and set aside those experiences. So for those reasons, I don't see any reason to strike him for cause . . . .

The trial court, therefore, denied Petty's motion to strike for cause, and Petty removed Willis by exercising a peremptory strike.

ANALYSIS

Petty challenges the trial court's denial of his motion to strike Willis for cause, relying heavily on his statement that the two prior Maryland cases he described in voir dire left "a bad taste in [his] mouth" about them. Petty claims this remark demonstrated Willis's inability to hear the case impartially and that any attempt to rehabilitate him would be "futile." We note first that exercising a peremptory strike—as Petty did here—does not render harmless an error in denying a motion to strike a juror for cause. *See, e.g.*, *Winston v. Commonwealth*, 32 Va. App. 864, 869 (2000). Even so, the record shows that the trial court did not err by failing to strike Willis for cause.

Whether a juror is sufficiently impartial "is a question of fact, and a trial court's decision to seat a juror is entitled to great deference on appeal." *Huguely v. Commonwealth*, 63 Va. App. 92, 121 (2014) (quoting *Lovos-Rivas v. Commonwealth*, 58 Va. App. 55, 61-62 (2011)) (citations omitted). The test "is whether the venireperson can lay aside the preconceived views and render a verdict based solely on the law and evidence presented at trial." *Id.* (quoting *Griffin v. Commonwealth*, 19 Va. App. 619, 621 (1995)). We accord the trial court great deference in its determination on this matter because "it is in a superior position" to assess the responses and determine the prospective juror's ability to follow the court's instructions and perform the duties of a juror. *Id.* So we will not disturb this determination "on appeal unless there has been manifest error amounting to an abuse of discretion." *Id.*

The trial court acted within its discretion by finding Willis impartial enough to be seated as a juror. Petty focuses chiefly on Willis's statement that the two Baltimore cases he was familiar with

had "le[ft] a bad taste in [his] mouth." However, reviewing the record as a whole, this statement does not call Willis's impartiality into question. *See Taylor v. Commonwealth*, 61 Va. App. 13, 24 (2012) ("In conducting our review, we consider the juror's entire voir dire, not merely isolated statements." (citing *Vinson v. Commonwealth*, 258 Va. 459, 467 (1999))).

Willis explained that his past experiences would not keep him from being impartial in this case. He acknowledged that the present case and the prior ones involved "different circumstances." And he pointed out that there were "many years between" the Baltimore cases and the instant case and that "things are different in different areas." Willis testified that he could set aside the prior cases and decide the present one fairly and based on the evidence. It was only after all these statements that Willis said the prior cases had left a bad taste in his mouth. But Willis immediately followed up by voluntarily saying that those cases were "totally separate than what this may be or others may be."

Even if the Court viewed Willis's statement about the prior cases leaving a bad taste in his mouth as equivocal, this equivocation alone would not establish manifest error by the trial court. "[W]e defer to the trial court to resolve any potentially equivocal statements because of its opportunity to observe the juror's tone and demeanor." *Keepers v. Commonwealth*, 72 Va. App. 17, 45 (2020). In *Keepers*, this Court upheld seating a prospective juror who had said during voir dire that "I . . . cannot sit here and honestly say that what I heard is not going to bias me," and, further, "I want to be fair, so I guess that is one of the reasons I hesitate[d in answering a prior question] . . . I think I can." *Id.* at 32.

Likewise, in *Weeks v. Commonwealth*, 248 Va. 460 (1994), our Supreme Court upheld the trial court's denial of a motion to strike a juror who had replied "I think so" to a question of whether he could be impartial in a death penalty trial. *Id.* at 475. The Supreme Court held that the trial court

was justified in accepting this remark as an acknowledgment that the juror could be impartial. *See id.* ("[T]he trial judge, not this Court, heard [the juror's remark].").

So too, here. The trial judge described Willis as "very adamant that he could be fair and impartial." Many of his responses during his questioning, rather than merely assenting to leading questions, volunteered his view that this case should be judged on its own merits. The trial court justifiably understood Willis's voir dire to establish his impartiality. Thus, the trial court did not err by denying the motion to strike him for cause.

CONCLUSION

The trial court did not err by denying Petty's motion to strike Juror Willis for cause. This Court, therefore, affirms the trial court's judgment.

*Affirmed.*