COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges O'Brien, Lorish and Senior Judge Humphreys

ADAM ROSS CUNNINGHAM, A/K/A
 SWAG CUNNINGHAM

 MEMORANDUM OPINION[*]
v.      Record No. 0857-25-3     PER CURIAM
 FEBRUARY 24, 2026

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
Shannon T. Sherrill, Judge

(Jessica N. Sherman-Stoltz; Sherman-Stoltz Law Group, PLLC, on
briefs), for appellant.

(Jason S. Miyares,[1] Attorney General; Liam A. Curry, Assistant
Attorney General, on brief), for appellee.


A jury convicted Adam Ross Cunningham of attempted strangulation and attempted

abduction, and the circuit court sentenced him to 10 years of incarceration, with four years

suspended. Cunningham contends that the court erred in permitting a witness to testify about

subsequent acts of violence he committed against the same victim and argues that the evidence

was insufficient to support his convictions.[2] Finding no error, we affirm.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

[2] Having examined the briefs and record in this case, the panel unanimously agrees that
oral argument is unnecessary because "the appeal is wholly without merit." *See* Code
§ 17.1-403(ii)(a); Rule 5A:27(a).

BACKGROUND[3]

On March 20, 2024, Ashley Tyree, who was driving on Howardsville Road, slowed when she noticed K.R.[4] on the side of the road, chasing a dog. K.R. caught the dog and ran towards Tyree's vehicle. K.R. tried to enter the front passenger seat; alarmed, Tyree locked her vehicle doors. Tyree rolled her window down to speak to K.R., who was screaming and crying. K.R. repeatedly asked for help and said, "he [is] trying to kill me."

Tyree then saw Cunningham running toward the car from a nearby home. At the front of Tyree's vehicle, Cunningham collided into K.R. "like a hurricane." He grabbed K.R. "by the throat and started . . . slinging her . . . around," demanding that she "get in the fucking house, give me my fucking dog." Tyree described the event as a "chaos of an attack." K.R. refused to release the dog, screaming that Cunningham had shot it, and she curled herself around the animal to protect it.

Tyree told Cunningham that she was calling the police. Cunningham answered that "if you call the cops, [K.R.'s] the one that's going . . . to jail, so go right ahead." Tyree also retrieved her gun from her vehicle's console, unlocked her vehicle, and told K.R. to get inside. After K.R. entered her vehicle, Tyree again told Cunningham to move away. He answered that Tyree was "gonna fucking regret this," and that he would "get [her] too."

K.R. initially denied knowing Cunningham but eventually admitted to Tyree that his name was "Swag" and that he had bought her the dog. The dog was moving around the backseat

---

[3] When the sufficiency of the evidence is challenged, "we recite the evidence below 'in the "light most favorable" to the Commonwealth, the prevailing party in the trial court.'" *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, we discard any evidence that conflicts with the Commonwealth's evidence, and "regard as true all the credible evidence favorable to the Commonwealth and all inferences to be drawn therefrom." *Cady*, 300 Va. at 329.

[4] We use initials to protect the victim's privacy.

with a "big orange dot" on his head, leaving "orange paint everywhere." K.R. told Tyree that Cunningham had shot her and the dog with a paintball gun. Tyree encouraged K.R. to report the assault to police, but K.R. refused. As Tyree drove her home, K.R. was "hysterically crying" and appeared terrified. After she dropped K.R. off, Tyree noticed orange paint where K.R. had been sitting, around the area of her head. Fearing for K.R.'s safety, Tyree reported the assault to police.

Augusta County Sheriff's Sergeant Aaron Will spoke with K.R. after Tyree's report. K.R. was "very upset" and initially refused to answer questions about the assault. After about 30 minutes, K.R. identified Cunningham as the assailant and stated that she was afraid of him. Sergeant Will noticed two orange paint marks on the right side of her head—one near the temple area, the other further back on her right side. K.R. showed Sergeant Will several red marks on her back. He also saw orange paint on the dog's head.

Officers obtained a search warrant for the residence Tyree had seen Cunningham come from, which was owned by his mother. On the front porch, they found a paintball gun with orange paintballs loaded inside. A neighbor had discovered the paintball gun in a ditch on the edge of the property; she returned it to Cunningham's mother, who stated that she did not know where it came from.

Cunningham was charged with attempted strangulation, attempted abduction, assault and battery, and animal cruelty. At trial, the Commonwealth presented testimony from Tyree and the investigating officers, and introduced pictures of the paintball gun, K.R.'s injuries, and the orange marks on K.R. and the dog.

K.R. testified for Cunningham. She claimed that after they had an argument, she took the paintball gun and threw it outside the house. She denied that Cunningham had put his hands around her neck or held her near Tyree's car. She also testified that after Tyree took her home,

she got high, which turned her into "not a good person." On cross-examination, she admitted that her testimony differed from what she had told Sergeant Will during his investigation. But according to K.R., she could not recall what she had told Sergeant Will about her relationship with Cunningham and the assault.

Cunningham testified similarly and denied putting his hands on K.R.'s neck. He claimed that he was trying to protect K.R. from getting high and he had no intention of hurting her. He suggested that Tyree was "offended" by his "very rude" behavior but denied threatening her. On cross-examination, the Commonwealth confronted Cunningham with his 28 felony convictions related to drug use and distribution, weapon possession, and probation violations.

On rebuttal, the Commonwealth recalled Sergeant Will, who is also a paramedic and registered nurse. Sergeant Will noted that he had not seen any indication that K.R. was high when he spoke with her. He recounted K.R.'s statements to him about the events leading up to the assault at Tyree's vehicle. She told him that during an argument, Cunningham physically assaulted her in the car before they arrived at his mother's house. After she got out of the car, Cunningham grabbed his paintball gun and started shooting her in the head with orange paintballs. K.R. called her dog from the car, and when the dog ran past Cunningham, he shot it twice in the head. K.R. ran to the road and over to Tyree's vehicle. Sergeant Will recounted that K.R. expressed fear for herself and her children. The Commonwealth also recalled Tyree, who reiterated that during the entire encounter, Cunningham had been violent and K.R. had been terrified.

As the last rebuttal witness, the Commonwealth called forensic nurse Renee Pullen. Cunningham objected to her anticipated testimony about injuries he inflicted on K.R. after the assault on March 20. The court overruled the objection and gave a limiting instruction to the

jury that it could only consider the evidence as it related to motive, intent, absence of mistake, and evidence of the relationship between Cunningham and K.R.

Pullen testified that she treated K.R. in April of 2024. K.R. had injuries to her face and head, including lacerations in her mouth and back of the head, loose teeth, and bruising under her eye. Further testing revealed a nasal fracture and bruises on her body. K.R. told Pullen that Cunningham was responsible for her injuries; he kicked her in the mouth and threw something at the back of her head.

When the Commonwealth rested, Cunningham unsuccessfully moved to strike the evidence. The court ruled that the evidence presented created a jury question. The jury convicted Cunningham of attempted strangulation, attempted abduction, and misdemeanor assault and battery. Cunningham appeals.[5]

ANALYSIS

I. Admissibility of the Evidence

"The determination of the 'admissibility of evidence is within the discretion of the trial court,' and an appellate court will not reject such decision absent an 'abuse of discretion.'" *Williams v. Commonwealth*, 71 Va. App. 462, 487 (2020) (quoting *Tirado v. Commonwealth*, 296 Va. 15, 26 (2018)). "The abuse of discretion standard draws a line—or rather, demarcates a region—between the unsupportable and the merely mistaken, between the legal error . . . that a reviewing court may always correct, and the simple disagreement that, on this standard, it may not." *Jefferson v. Commonwealth*, 298 Va. 1, 10-11 (2019) (alteration in original) (quoting *Reyes v. Commonwealth*, 297 Va. 133, 139 (2019)). "[T]he abuse of discretion standard requires

---

[5] Cunningham's assignment of error asserts that the evidence did not support his convictions for attempted strangulation, attempted abduction, and animal cruelty. But he was acquitted of animal cruelty. Regardless, his sufficiency argument on brief challenges only the felonies, so we address the sufficiency of the evidence for those offenses only. Rule 5A:20(e).

a reviewing court to show enough deference to a primary decisionmaker's judgment that the [reviewing] court does not reverse merely because it would have come to a different result in the first instance." *Commonwealth v. Thomas*, 73 Va. App. 121, 127 (2021) (alterations in original) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 212 (2013)).

"In this context, . . . '[appellate courts] consider only whether the record fairly supports the trial court's action.'" *Bista v. Commonwealth*, 303 Va. 354, 370 (2024) (quoting *Kenner v. Commonwealth*, 299 Va. 414, 423 (2021)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Id.* (quoting *Commonwealth v. Swann*, 290 Va. 194, 197 (2015)).

Although evidence of other bad conduct by a defendant "is generally not admissible to prove the character trait of a person in order to show that the person acted in conformity therewith[,] . . . such evidence is admissible if it tends to prove any relevant fact pertaining to the offense charged" and when "the legitimate probative value of such proof outweighs its incidental prejudice." Va. R. Evid. 2:404(b).

> [O]ther crimes evidence is admissible when it "shows the conduct or attitude of the accused toward his victim[;] establishes the relationship between the parties[;] or negates the possibility of accident or mistake[;]" or shows motive, method, intent, plan or scheme, or any other relevant element of the offense on trial.

*Kenner*, 299 Va. at 424 (second, third, and fourth alterations in original) (quoting *Ortiz v. Commonwealth*, 276 Va. 705, 714 (2008)). "Even where another crime is not inextricably linked with the offense on trial, it may nevertheless be proved if it shows the conduct and feeling of the accused toward his victim, his motive, intent, plan or scheme, or any other relevant element of the offense on trial." *Scott v. Commonwealth*, 228 Va. 519, 527 (1984).

We reject Cunningham's claim that the court abused its discretion in permitting the forensic nurse to testify about Cunningham's subsequent attack on K.R. In disputing the Commonwealth's

case, Cunningham presented himself as a benevolent, non-violent partner who sought to prevent K.R. from harming herself with drug use. He denied putting his hands on her neck or having any intention of hurting her. The accuracy of the picture he painted of his relationship with K.R.—his allegedly peaceful demeanor towards her—was thus relevant. Pullen's testimony contradicted Cunningham's claims and demonstrated his attitude toward K.R. and the turbulent and violent nature of their relationship.

Cunningham argues that even if the evidence was relevant, he was unduly prejudiced by its admission. Weighing the probative value of evidence against its incidental prejudice "rests in the trial court's discretion and we will not disturb the trial court's determination in the absence of a clear abuse of discretion." *Kenner*, 299 Va. at 427. "Relevant evidence may be excluded if 'the probative value of the evidence is substantially outweighed by . . . the danger of unfair prejudice.'" *Fields v. Commonwealth*, 73 Va. App. 652, 672 (2021) (alteration in original) (quoting Va. R. Evid. 2:403(a)(i)). Here, the court curtailed the danger of unfair prejudice to Cunningham by giving the jury a limiting instruction restricting consideration of the other crimes evidence to the limited purposes for which it was admissible.

We have consistently held that when there is a concern that evidence may be unfairly prejudicial, a limiting or clarifying instruction is the appropriate remedy. *Winston v. Commonwealth*, 32 Va. App. 864, 872 (2000). "Unless the record shows the contrary, it is to be presumed that the jury followed an explicit cautionary instruction promptly given." *LeVasseur v. Commonwealth*, 225 Va. 564, 589 (1983). Nothing in the record before us rebuts the presumption that the jury followed the court's instructions and considered the probative value of the disputed evidence for its limited purposes. Given the relevance of the evidence and the court's limiting instruction, we find no abuse of discretion in permitting the testimony.

II.  Sufficiency of the Evidence

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one."  *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024).  "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'"  *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680).  The only relevant question for this Court on review is "upon review of the evidence in the light most favorable to the prosecution, 'whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Id.* (quoting *Dietz v. Commonwealth*, 294 Va. 123, 132 (2017)).

Cunningham argues that the evidence did not support his convictions for attempted abduction and attempted strangulation.  "An attempt to commit a crime is composed of two elements: (1) [t]he intent to commit it; and (2) a direct, ineffectual act done towards its commission."  *Fary v. Commonwealth*, 77 Va. App. 331, 342 (2023) (alteration in original) (quoting *Merritt v. Commonwealth*, 164 Va. 653, 657 (1935)), *aff'd*, 303 Va. 1 (2024).  "Whether the actions of a particular defendant rise to the level of an attempted crime is a fact-specific inquiry that must be decided on a case-by-case basis."  *Ashford v. Commonwealth*, 47 Va. App. 676, 681 (2006).

"The intent required to be proven in an attempted crime is the specific intent in the person's mind to commit the particular crime for which the attempt is charged."  *Fletcher v. Commonwealth*, 72 Va. App. 493, 506 (2020) (quoting *Wynn v. Commonwealth*, 5 Va. App. 283, 292 (1987)).  "[W]hether the required intent exists is generally a question for the trier of fact."  *Nobles v. Commonwealth*, 218 Va. 548, 551 (1977).  "[T]he fact finder may infer that a person intends the immediate, direct, and necessary consequences of his voluntary acts."  *Fletcher*, 72

Va. App. at 506 (alteration in original) (quoting *Moody v. Commonwealth*, 28 Va. App. 702, 706-07 (1998)).

"The direct but ineffectual act is commonly referred to as an 'overt act.'" *Jones v. Commonwealth*, 70 Va. App. 307, 318 (2019) (en banc) (quoting *Jay v. Commonwealth*, 275 Va. 510, 525 (2008)). The overt act "must possess four characteristics: first, it must be a step toward a punishable offense; second, it must be apparently (but not necessarily in reality) adapted to the purpose intended; third, it must come dangerously near to success; fourth, it must not succeed." *Id.* at 317-18 (quoting J.H. Beale, Jr., *Criminal Attempts*, 16 Harv. L. Rev. 491, 492 (1903)). "While the overt acts of the accused [need not be] the last proximate acts necessary to the consummation of the crime, they [must be] direct overt acts well calculated to accomplish the result intended." *Id.* at 323 (alterations in original) (quoting *Jay*, 275 Va. at 526). "[A]n act constituting an attempt can be 'slight.'" *Id.* at 324.

A defendant is guilty of abduction if he "by force, intimidation or deception, and without legal justification or excuse . . . detains . . . another person with the intent to deprive such other person of his personal liberty." Code § 18.2-47(A). "Put simply, the *actus reus* of the crime is a taking, transporting, or detention of another, while the *mens rea* of the crime is a specific intent to deprive another of her liberty." *Brown v. Commonwealth*, 74 Va. App. 721, 730-31 (2022).

A defendant commits strangulation if he, "without consent, impedes the blood circulation or respiration of another person by knowingly, intentionally, and unlawfully applying pressure to the neck of such person resulting in the wounding or bodily injury of such person." Code § 18.2-51.6(A).

The evidence here permitted a reasonable juror to find Cunningham guilty of attempted strangulation and attempted abduction. Cunningham collided into K.R. "like a hurricane" as

- 9 -

K.R. frantically sought Tyree's help to escape from him. Cunningham grabbed K.R.'s neck with both his hands and shook her back and forth. In doing so, Cunningham committed an overt act, from which a reasonable factfinder could infer that he intended to impede K.R.'s respiration by way of bodily injury. Code § 18.2-51.6(A).

During his assault on K.R., Cunningham screamed at her to get back into the house. When Tyree retrieved her firearm in response to Cunningham's violence, he ended his assault of K.R. and moved towards Tyree instead. She was forced to hold him at gunpoint to prevent him from interfering with K.R. entering her vehicle. He then threatened Tyree, saying she was "gonna fucking regret this" and that he would "get [Tyree] too." These overt acts permit a reasonable juror to find that Cunningham attempted to use force and intimidation to detain K.R. at his mother's home "with the intent to deprive" her of her "personal liberty." Code § 18.2-47(A).

The disputing versions alleged by Cunningham and K.R. during the trial do not alter this analysis. "Determining the credibility of witnesses . . . is within the exclusive province of the [fact finder], wh[o] has the unique opportunity to observe the demeanor of the witnesses as they testify." *Welch v. Commonwealth*, 79 Va. App. 760, 767 (2024) (first and second alterations in original) (quoting *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015)). The competing versions presented factual issues for the jury to determine. When, as here, the jury has resolved credibility issues in the Commonwealth's favor, "those findings will not be disturbed on appeal unless plainly wrong." *Id.* (quoting *Towler v. Commonwealth*, 59 Va. App. 284, 291 (2011)).

CONCLUSION

For these reasons, we affirm the court's judgment.

*Affirmed.*